Department of Labor
No. 99-292

APPEAL OF SEACOAST FIRE EQUIPMENT COMPANY

(New Hampshire Department of Labor)

July 13, 2001

*Noucas & Keenan*, of Portsmouth (*Christopher W. Keenan* on the brief and orally), for the plaintiff.

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*Benjamin T. King* on the brief and orally), for the defendant.

BRODERICK, J. The defendant, Seacoast Fire Equipment Company (Seacoast), appeals a decision of the New Hampshire Department of Labor (DOL) finding that it violated the Whistleblowers' Protection Act (Act), RSA 275-E:2, I(a) (1999), by terminating the employment of the plaintiff, Allen Hendrigan. We affirm.

The record supports the following facts. The plaintiff was hired by Seacoast in November 1995 as the manager of its Newington office. In August 1997, the plaintiff expressed his concern to Seacoast's owner and president, Donald Baizley, about a sink through which Seacoast disposed of fire extinguisher residue that drained directly into the ground outside its building. The plaintiff also reported the alleged illegal dumping to Seacoast's landlord and to the Newington

fire department. Once informed, the landlord took soil samples which proved to be non-toxic.

In August or early September 1997, the plaintiff notified Seacoast that he was not receiving all wages to which he was entitled as a salaried employee. He showed Baizley the applicable New Hampshire wage and hour laws and informed him that he would "file what [he] ha[d] to file" in order to get his full salary. The plaintiff subsequently filed a complaint with the DOL, which prompted an inspection of Seacoast in mid-September. At that time, the DOL gave Seacoast a citation for paying the plaintiff less than his full salary in violation of RSA 275:43-b, I (1999).

The plaintiff was terminated by Seacoast in late October 1997. He filed a whistleblower complaint with the DOL in April 1998 alleging, among other things, violations of RSA 275-E:2, I(a), which provides:

> No employer shall discharge, threaten, or otherwise discriminate against any employee regarding such employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (a) The employee, in good faith, reports or causes to be reported, verbally or in writing, what the employee has reasonable cause to believe is a violation of any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States . . . .

At the hearing before the DOL, the plaintiff alleged that he had been terminated for filing and participating in the investigation of his wage claim, and for reporting illegal dumping, illegal electrical work, and evasion of Maine sales taxes. Seacoast justified the termination on the grounds that: (1) its Newington office saw its revenues decline by $17,000 between October 1996 and October 1997; and (2) the plaintiff left the office unattended during business hours, was rude to customers and was insubordinate.

The DOL found that Seacoast terminated the plaintiff, in violation of the Act, for reporting the wage law violation and the improper sink drainage. On appeal, Seacoast argues that the DOL erred by failing to properly allocate the burden of proof, and failing to require compliance with the grievance provisions of RSA 275-E:4 (1999).

 We review the DOL's decision under the standard set forth in RSA 541:13 (1997). *See Appeal of Coffey*, 144 N.H. 531, 532 (1999); *see also* RSA 275-E:4, II (1999). We will not set aside the DOL's decision except for errors of law, unless we are satisfied, by a clear

preponderance of the evidence, that such order is unjust or unreasonable. *See Appeal of Fred Fuller Oil Co.*, 144 N.H. 607, 609 (2000). We presume the DOL's factual findings are *prima facie* lawful and reasonable and will not overturn them unless the record does not contain sufficient evidence to support them. *See Appeal of Osram Sylvania*, 142 N.H. 612, 617 (1998).

I

■ Seacoast first argues that the DOL erred as a matter of law by failing to use the *McDonnell Douglas* burden-shifting framework when evaluating the evidence before it. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Although we have not explicitly adopted this specific framework in a whistleblower case, we have applied it to discrimination actions brought under RSA chapter 354-A. *See E.D. Swett, Inc. v. N.H. Comm. for Human Rights*, 124 N.H. 404, 408-09 (1983). In such cases we found it "helpful to look to the experience of the federal courts in construing the similar provisions of Title VII of the 1964 Civil Rights Act." *Scarborough v. Arnold*, 117 N.H. 803, 807 (1977). We similarly conclude that the federal standards used to evaluate retaliation claims under Title VII are useful in resolving claims under RSA chapter 275-E. *Cf. Wytrwal v. Mowles*, 886 F. Supp. 128, 147 (D. Me. 1995) (noting that "generally, courts have applied the federal standards arising under Title VII case law to the state whistleblower protection statute"), *aff'd sub nom. Wytrwal v. Saco School Bd.*, 70 F.3d 165 (1st Cir. 1995). Accordingly, we formally adopt the *McDonnell Douglas* framework in whistleblower cases and we review the instant case under that framework.

■ ■ Under *McDonnell Douglas*, the claimant bears the initial burden of establishing a *prima facie* case of unlawful conduct. *See Scarborough*, 117 N.H. at 807. In the whistleblower context, this requires the claimant to show that: (1) he engaged in an act protected by the whistleblowers' protection statute; (2) he suffered an employment action proscribed by the whistleblowers' protection statute; and (3) there was a causal connection between the protected act and the proscribed employment action. *Cf. Wytrwal*, 886 F. Supp. at 147 (reciting elements of *prima facie* case under the Maine whistleblower protection statute). Once the claimant has presented a *prima facie* case, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *Scarborough*, 117 N.H. at 808 (quotation omitted). The claimant must then be given a chance to demonstrate that the employer's proffered reason was actually a pretext. *See id.*

Seacoast argues that the DOL failed to apply the burden-shifting required under the second and third stages of the *McDonnell Douglas* framework to the facts of this case. Specifically, it contends that the DOL "erroneously concluded that the [plaintiff] carried his burden to establish discrimination, when in fact [he] did nothing more than arguably establish a *prima facie* case, which merely generated a presumption of discrimination" that Seacoast rebutted by articulating legitimate, nondiscriminatory reasons for his termination. (Emphasis added.) Once it did so, Seacoast argues that the plaintiff failed to prove that the reasons it advanced for termination were pretextual.

We do not agree that the DOL failed to engage in proper burden-shifting. After the hearings officer allowed Seacoast to present its reasons for terminating the plaintiff, he allowed the plaintiff to present testimony to refute Seacoast's justification. In his decision, the hearings officer specifically noted that the plaintiff denied all of Seacoast's criticisms of his job performance. The hearings officer concluded that the plaintiff was, in fact, terminated for reporting suspected illegality and that Seacoast's proffered reasons for termination were pretextual. In denying Seacoast's motion for reconsideration, the DOL "den[ied] that any misallocation was made regarding the burden of proof."

Seacoast nevertheless contends that step three of the *McDonnell Douglas* analysis required the plaintiff to present further evidence, in addition to that introduced in steps one and two, to establish that its reasons for terminating him were pretextual. Seacoast contends that because the plaintiff failed to offer such evidence, his whistleblower claims should have failed. Seacoast also argues, citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997), that the plaintiff failed to establish causation because the only evidence he presented — that of temporal proximity between his protected acts and his termination — is not enough to prove causation. We reject both arguments.

■ It is true that the burden placed on the employer at step two of the *McDonnell Douglas* framework is a burden of production only, and that "the ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) (quotation and brackets omitted). There is no requirement, however, that the plaintiff introduce more than his *prima facie* case in order to meet his ultimate burden of persuasion. *See id.* at 511.

> The factfinder's disbelief of the reasons put forward by the [employer] (particularly if disbelief is accompanied by a suspicion of mendacity ) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the [employer's] proffered reasons will *permit* [, though not compel,] the trier of fact to infer the ultimate fact of intentional discrimination, and . . . no additional proof of discrimination is *required*.

*Id.* (footnote, quotations and brackets omitted).

The DOL implicitly employed this analysis in ultimately accepting the plaintiff's evidence of retaliation rather than Seacoast's several explanations for its termination. The record contains sufficient evidence to support its findings. Not only did the plaintiff's testimony, which disputed the veracity of Seacoast's purported complaints about his performance, undermine the testimony of Seacoast's witnesses, but there was other evidence which could support an inference that Seacoast's reasons for termination were contrived after the fact. For instance, the $17,000 decline in income did not come to Baizley's attention through routine business operations but in response to a specific inquiry. Seacoast's bookkeeper testified that Baizley asked her sometime in October 1997 "to take a look at the difference between '96 and '97, to see if there was a difference in income for Seacoast." In fact, the bookkeeper was not sure whether this request was made before or after the plaintiff was terminated.

Similarly, Baizley testified that he learned of the plaintiff's absences from the office "probably later in '97" but did not specify whether it was before or after he terminated him. Additionally, the hearings officer could have taken the plaintiff's testimony that Baizley never complained to him about his performance as evidence that Seacoast's proffered concerns were either not true or did not exist prior to his termination.

We need not address Seacoast's contention that temporal proximity alone is not enough to establish causation because the evidence in this case went well beyond temporal proximity. There was ample evidence from which the DOL could infer that Seacoast's proffered reasons for terminating the plaintiff were, in fact, pretextual.

## II

Seacoast also contends that the DOL erred by finding in favor of the plaintiff even though, contrary to RSA 275-E:4, I, he never

sought to address his complaints through the company's grievance procedures. RSA 275-E:4, I, provides:

> Any employee who alleges a violation of rights under RSA 275-E:2 or 3, and who has first made a reasonable effort to maintain or restore such employee's rights through any grievance procedure or similar process available at such employee's place of employment, may obtain a hearing with the commissioner of labor or a designee appointed by the commissioner.

The DOL found that the plaintiff could not have made any reasonable effort to maintain or restore his rights following his termination based on Baizley's testimony that no post-termination grievance process existed. Seacoast nevertheless argues that the plaintiff could have challenged its action at the time of termination because Baizley testified that all Seacoast employees knew that they should lodge any complaints with him. We disagree.

At the hearing, Baizley testified that "each employee is instructed by me, directly, that if they have a problem with the manager or a problem they feel they can't go to the manager with, they are to come directly to me and air their grievance." The DOL could reasonably have found that this procedure, apparently designed to ensure that an employee having trouble with a manager would not have to confront that manager directly, offered no recourse to the plaintiff, whose grievance was with Baizley himself.

*Affirmed.*

BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, sat for oral argument but did not take part in the final vote.