# United States Court of Appeals
## For the First Circuit

---

No. 00-2432

EILEEN P. KIRK, M.D.,

Plaintiff, Appellant,

v.

THE HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL,
DARTMOUTH HITCHCOCK MEDICAL CENTER, DARTMOUTH COLLEGE,
DARTMOUTH MEDICAL SCHOOL, LISABETH MALONEY, BARRY SMITH,
THOMAS COLACCHIO, AND ELLEN HUBBELL,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

---

Before

Boudin, Chief Judge,

Bownes, Senior Circuit Judge,

and Torruella, Circuit Judge.

---

Nancy S. Tierney, for appellant.
Kevin P. Light, with whom Choate, Hall & Stewart, were on brief,
for appellees.

---

August 20, 2001

**TORRUELLA, Circuit Judge.** Appellant Eileen Kirk appeals the decision of the district court granting summary judgment in favor of appellees The Hitchcock Clinic, Mary Hitchcock Memorial Hospital, Dartmouth Hitchcock Medical Center, Dartmouth College, Dartmouth Medical School, Lisabeth Maloney, Barry Smith, Thomas Colacchio, and Ellen Hubbell (collectively, "Hitchcock") as to her claims of sex discrimination and retaliatory and discriminatory discharge. Kirk v. Hitchcock Clinic, No. CIV. 98-700-M, 2000 WL 1513715 (D.N.H. Sept. 29, 2000) (Summ. J. Order). We affirm.

## BACKGROUND

Kirk brought this discrimination action against her former employer pursuant to Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, et seq. Because the district court order provides a well-summarized factual background, Kirk, 2000 WL 1513715, at *1-*3, we limit our chronology to the key events.

Kirk was hired by Hitchcock in September of 1992 to work as a doctor in the Obstetrics and Gynecology Department. Her continued employment was subject to annual review. After five years, she was to be eligible for "voting membership," a status akin to tenure in an academic institution. For Kirk's annual appointments in 1993, 1994, and 1995, she was recommended without reservation and reappointed without incident. Sometime in 1995, Kirk became concerned about the

-3-

quality of care in the labor and delivery ward,[1] and became something of a crusader in raising these quality assurance issues. This caused a strain in her relationships with some of the nurses and/or the nursing leadership.

In 1996, Hitchcock began negotiating with neighboring Alice Peck Day Hospital ("APD") to provide APD with obstetrical services. Hoping to escape the tense working environment at Hitchcock, Kirk volunteered to be one of the doctors assigned to APD. The chairperson of the department at the time, Dr. John Currie, told her that he was not going to send a woman to APD. Interpreting this comment as sex discrimination, Kirk reported Currie to the Medical Director. Following an internal investigation that concluded that the remark, while poorly phrased, represented a business decision and not discrimination,[2] the matter was for the most part resolved with an apology by Currie to Kirk.

During this time, Kirk continued to voice her concerns regarding alleged quality control issues, which resulted in more bad feelings between Kirk and several individuals at Hitchcock. Prior to her reappointment in 1996, Kirk agreed to work on improving the

---

[1] Kirk's concerns allegedly came to the fore in the fall of 1994 following a birth that she handled in which medical complications resulted in brain damage to the infant.

[2] Currie explained that his comment related to the general high demand for female ob/gyns and was intended to express his unwillingness to loan Kirk to Hitchcock's competitor, APD.

situation in several ways. Nevertheless, not much changed in the subsequent year, and Kirk was denied reappointment and tenure in 1997 due to "lack of collegiality." After failing to have this decision overturned by Hitchcock's internal appeals process, and losing her claim brought under New Hampshire's "Whistleblower's Act," this lawsuit proceeded in the federal district court of New Hampshire.

The district court's order in response to Hitchcock's Motion for Summary Judgment held the following: (1) Kirk had not produced evidence that the alleged hostile work environment to which she was subject was based on sex; (2) Kirk's discrimination claim based on the 1996 comment made by Currie that he was not sending a female ob/gyn to APD was time-barred since it was not brought within the 300-day filing deadline prescribed by 42 U.S.C. § 2000e-5(e); (3) the failure to timely file was not excused by any exceptional circumstance that would warrant tolling the time limit; (4) the 1996 comment was not part of a pattern of ongoing discrimination that culminated in her 1997 firing under any "continuing violation" theory; and (5) Kirk had not offered evidence that her termination was the result of her reporting the 1996 Currie comment or of disparate treatment. Kirk, 2000 WL 1513715.[3] In this appeal, Kirk focuses on the issues of timeliness and wrongful termination. Specifically, she first argues that the 1996 Currie

---

[3] The district court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice for refiling in the state court. Id. at *7.

remark should be considered under either the "serial" or "systematic" continuing violation theory.  In the alternative, she requests that we toll the 300-day time limit based on principles of equitable estoppel.  Second, she appeals the holding that her termination was neither retaliatory nor motivated by sex discrimination.

## DISCUSSION

Our review is de novo.  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000); Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 611 (1st Cir. 2000).  However, after careful review of the record, briefs, and filings of the parties, as well as of the district court order, we conclude that the opinion of the district court is "comprehensive[ and] well-reasoned."  Lawton v. State Mut. Life Assurance Co. of Am., 101 F.3d 218, 220 (1st Cir. 1996).  We affirm, therefore, based in substantial part on the district court judgment and offer only a few brief comments.  See, e.g., id.

## A.  Waiver of Equitable Estoppel Argument

In the district court, Kirk argued that the delay in filing her claim of sex discrimination should be excused because "she was afraid she would lose her job if she filed earlier."  Kirk, 2000 WL 1513715, at *5.  This excuse was properly rejected by the district court. Now, for the first time, she claims that she failed to file a claim in reliance on deliberately false representations by Hitchcock that the matter was resolved and that her job was secure.  According to

Kirk, Hitchcock reappointed her in 1996 solely due to fear of Title VII liability and intended to fire her as soon as the risk of litigation had passed. Although we suspect that this excuse too would have failed, Kirk has precluded its consideration in this Court by neglecting to make the argument before the district court. United States v. Barnett, 989 F.2d 546, 554 (1st Cir. 1993) ("Issues not squarely raised in the district court will not be entertained on appeal."). The lack of evidentiary support for Kirk's allegation of misrepresentation by Hitchcock, moreover, takes this instance beyond the scope of the narrow exception to the raise-or-waive rule. Id. at 554 n.8 (exception reserved for "exceptional cases involving a gross miscarriage of justice").

## B.  Pretext v. Mixed-Motive Approach

While we fully support the district court's conclusion that Kirk has provided insufficient evidence to support her claim of retaliatory and/or discriminatory discharge, we wish to clarify the proper analytical approach. The district court held that Kirk's claim failed under either the "mixed-motive," Price Waterhouse v. Hopkins, 490 U.S. 228, 241-42 (1989) (plurality opinion), or the "pretext," McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), approach. Regarding the mixed-motive approach, the district court assumed that Kirk had met her evidentiary burden of showing than an illicit motive played a substantial factor in the termination decision; it

nevertheless granted summary judgment against her on the ground that Hitchcock had successfully demonstrated another adequate and non-discriminatory reason for terminating her.

We doubt, however, that Kirk actually proffered sufficient evidence to proceed under a mixed-motive approach. First Circuit precedent dictates that the mixed-motive test is reserved solely for cases in which direct evidence of unlawful activity has been submitted. Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000); Fernándes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 580 (1st Cir. 1999). Evidence is considered to be direct if "it consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." Febres, 214 F.3d at 60.

Kirk offers the statement made by Currie in 1996 that he was not sending a woman ob/gyn to APD as direct evidence of her wrongful termination claim. This comment may be direct evidence of Hitchcock's discriminatory refusal to send Kirk to APD, but that claim is now time-barred. As to the termination decision, the statement is not direct evidence at all: it is not direct evidence of retaliatory termination because it does not reflect a retaliatory motive, and it is not direct evidence or discriminatory termination because it does nothing to show that Currie's alleged animus influenced the decision not to reappoint.

Under the pretext approach, Kirk must first prove a prima facie case of either retaliation or disparate treatment. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1980); Provencher v. CVS Pharmacy, 145 F.3d 5, 10 (1st Cir. 1998). Assuming this requirement is met, Hitchcock then must supply a legitimate and nondiscriminatory justification for the decision not to reappoint. Provencher, 145 F.3d at 10. "Then, by a preponderance of the evidence, [Kirk] must show that the proffered reason is pretextual." Id. It is at this third stage that the district court held that Kirk's claim failed. Kirk, 2000 WL 1513715, at *6-*7. We are satisfied with the explanations provided by the district court for this conclusion and incorporate them as the basis for our affirmance in this regard.

Having nothing more to offer, we **affirm**.