Department of Labor
No. 2000-145

### APPEAL OF MARY ELLEN MONTPLAISIR

### (New Hampshire Department of Labor)

December 18, 2001

*Nancy Richards-Stower*, of Merrimack, by brief and orally, for the petitioner.

*Kenna, Johnston & Sharkey, P.A.*, of Manchester (*Bruce E. Kenna* on the brief and orally), for the respondent.

DUGGAN, J. The petitioner, Mary Ellen Montplaisir, appeals a decision by the New Hampshire Department of Labor (DOL) that she failed to prove that the defendant, Rosa Roofeh, M.D., P.C. (Dr. Roofeh), violated the Whistleblowers' Protection Act (Act), RSA 275-E:2, I(b) (1999). On appeal, Montplaisir argues the DOL erred when it failed to apply a mixed motive analysis on the evidence presented. We vacate and remand.

The record and the hearing officer's decision support the following facts. In July 1998, the petitioner was hired by Dr. Roofeh as office manager. The petitioner had previously been employed by the defendant's fiancé, Dr. William Willitts, who had a separate medical practice. In July of 1998, Dr. Willitts, who had previously been married, was being sought by State and federal investigators because he failed to appear at a child support hearing. On April 1, 1999, Dr. Willitts was arrested in Belize and flown to Miami where he was taken into custody by U.S. Marshals. The following day, federal and State law enforcement agencies searched Dr. Roofeh's office pursuant to a search warrant.

On April 7, 1999, Montplaisir and two co-employees were served with subpoenas to appear and testify before a federal grand jury. On April 8, 1999, the petitioner appeared before the grand jury. Upon returning to work the next day, the petitioner told the other office employees and Dr. Roofeh that she did not want to be questioned regarding her testimony before the grand jury. Dr. Roofeh terminated the petitioner's employment on April 15, 1999.

On April 26, 1999, Montplaisir filed a whistleblower's complaint with the DOL alleging a violation of RSA 275-E:2, I(b), which provides:

> No employer shall discharge, threaten, or otherwise discriminate against any employee regarding such employee's compensation, terms, conditions, location, or privileges of employment because:
>
> . . . .
>
> (b) The employee, in good faith, participates, verbally or in writing, in an investigation, hearing, or inquiry conducted by any governmental entity, including a court action, which concerns allegations that the employer has violated any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States.

In her complaint and at the DOL hearing, the petitioner alleged that she was terminated in retaliation for her cooperation with the U.S. Attorney's investigation of Dr. Willitts and Dr. Roofeh. In response, Dr. Roofeh contended that the petitioner's termination was justified because the petitioner took too much time off from work, did not get her work done, disregarded instructions to properly train a new employee, and was disloyal in that she secretly worked with other members of Dr. Roofeh's staff to establish a new medical practice.

The DOL found the cause of the petitioner's discharge was her overall behavior and not her testimony before the grand jury. The petitioner's motion to reconsider was denied. On appeal, the petitioner argues that the

DOL erred by: (1) failing to find a whistleblower violation when Dr. Roofeh admitted that she fired the employee because of her grand jury testimony; (2) failing to conduct a mixed motive analysis; (3) failing to credit Dr. Roofeh's own declaration against interest as an admission of unlawful motivation; and (4) denying the petitioner a fair hearing by not requiring Dr. Roofeh to answer certain questions.

We will not set aside the DOL's decision except for errors of law unless we are satisfied, by a clear preponderance of the evidence, that such order is unjust or unreasonable. RSA 541:13 (1997). "We presume the DOL's factual findings are *prima facie* lawful and reasonable and will not overturn them unless the record does not contain sufficient evidence to support them." *Appeal of Seacoast Fire Equip. Co.*, 146 N.H. 605, 608 (2001).

■ We have previously noted that "the federal standards used to evaluate retaliation claims under Title VII are useful in resolving claims under RSA chapter 275-E." *Id.* at 608. Under federal law, there are two basic ways for an employee to prove retaliation: the "pretext" approach and the "mixed motive" approach. *See Kirk v. Hitchcock Clinic*, 261 F.3d 75, 78 (1st Cir. 2001). In the context of a whistleblower action, both methods may be used to assess whether the employee participated in a protected activity and whether, because of the employee's participation, the employer discharged, threatened, or otherwise discriminated against the employee. RSA 275-E:2 I(a), (b).

■ The quality of the evidence determines whether a "pretext" or a "mixed motive" analysis applies. If there is only circumstantial evidence of retaliation, then the "pretext" approach applies. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). If there is direct evidence of retaliation, then the "mixed motive" approach applies. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 241-44 (1989) (superseded in part by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.*). An employee may proceed simultaneously on both approaches. *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 581 (1st Cir. 1999). Based upon the availability or unavailability of the proffered evidence, the hearing officer or trial court channels the case into one approach or the other. *Id.*

■ The analytical framework in a "pretext" case was established in *McDonnell Douglas v. Green*, 411 U.S. at 802-05; *see also Burdine*, 450 U.S. at 253. Under the "pretext" or *McDonnell Douglas* scheme, the employee bears the initial burden of establishing a *prima facie* case of

unlawful conduct. *Seacoast*, 146 N.H. at 608. To establish a *prima facie* case of retaliation, the employee must demonstrate that: (1) she engaged in an act protected by the whistleblowers' protection statute; (2) she suffered an employment action proscribed by the whistleblowers' protection statute; and (3) there was a causal connection between the protected act and the proscribed employment action. *Id.*

■ Establishing a *prima facie* case of retaliation creates a presumption that the employer unlawfully retaliated against the employee. *Burdine*, 450 U.S. at 254. This presumption places a burden upon the employer to rebut the *prima facie* case — *i.e.*, the burden to produce evidence that the adverse employment action was taken for legitimate, non-retaliatory reasons. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). The burden placed upon the employer is only a burden of production; the employee retains the burden of persuasion. *See id.* at 511; *Seacoast*, 146 N.H. at 609.

■■ If the employer satisfies its burden of production, the presumption raised by the *prima facie* case is rebutted and "drops from the case." *Burdine*, 450 U.S at 255, 255 n. 10. The employee then has the opportunity to show that the employer's preferred reason was not the true reason for the adverse employment action and that retaliation was. *Id.* at 256; *Seacoast*, 146 N.H. at 609. The employee may do this either indirectly by showing that the employer's stated reasons were not credible, or directly by showing that the adverse employment action was more likely motivated by retaliation. *Burdine*, 450 U.S. at 256. Under the "pretext" approach, the employee retains the ultimate burden of persuading the trier of fact that he or she was the victim of unlawful retaliation. *Id.* at 256.

■■ If the employee produces direct evidence that retaliation "played a substantial role in a particular employment decision," then the "mixed motive" approach applies. If the trier of fact believes the employee's direct evidence, the burden of persuasion shifts to the employer to show that despite the retaliatory animus, it would have made the same adverse employment decision for legitimate, non-retaliatory reasons. *Price Waterhouse*, 490 U.S. at 277-78 (O'Connor, J., concurring); *Appeal of N.H. Dept. of Employment Security*, 140 N.H. 703, 712 (1996). Evidence is considered to be direct if "it consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000). Thus, so long as the employee can meet the evidentiary

burden required by the "mixed motive" approach, then the burden of persuasion remains with the employer.

We now turn to the petitioner's contention that the DOL hearing officer erred in not performing a mixed motive analysis.

The DOL is under an obligation to set forth its methodology and findings fully and accurately so that this court may undertake meaningful judicial review of its methods, findings and decisions. *Appeal of Toczko*, 136 N.H. 480, 488-89 (1992). In this case, the DOL decision lacks the specificity and clarity needed to establish the basis of its decision.

The DOL hearing officer's decision is divided into two sections: the first section contains the "Findings of Fact"; the second the "Discussion and Conclusions." In the findings of fact, the hearing officer noted that: (1) Montplaisir did not have any conversations regarding the opening of another medical practice with co-workers; (2) Dr. Roofeh took Montplaisir into the bathroom on April 8, 1999, gave her a hug, told her that everything was going to be "okay" and told her to tell the grand jury that "you do not know anything"; (3) Dr. Roofeh called Montplaisir later on the same day and had her meet with Dr. Roofeh's attorney to find out what would happen before the grand jury the next day; (4) Dr. Roofeh's attorney met with Montplaisir and suggested she obtain her own lawyer, which she did; (5) before Montplaisir was subpoenaed, Dr. Roofeh discussed with another employee Montplaisir's absences and the effect of such absences on the office billing; (6) in early March, Dr. Roofeh received a telephone call from a patient informing her that some of her employees, including Montplaisir, were planning to open a new medical practice; and (7) Dr. Roofeh never threatened to fire Montplaisir as a result of her testimony before the grand jury.

In the Discussion and Conclusions section, the hearing officer noted that: (1) Dr. Roofeh told a friend that she had to fire Montplaisir for testifying at the grand jury on April 8; (2) Dr. Roofeh hired a new employee to assist with the front desk because of the allegation that certain members of her staff were setting up another medical practice; and (3) Montplaisir failed to take Dr. Roofeh's directions regarding the training of the new employee.

■ The hearing officer's decision does not clearly distinguish between what may be a summary of a witness's testimony and findings of fact. It is difficult to reconcile the finding that Dr. Roofeh admitted to a friend that she fired Montplaisir for her testimony before the grand jury with the conclusion that Montplaisir failed to prove that she was discharged because she testified before the grand jury. It is equally difficult to understand how the finding that Montplaisir did not have conversations

with other employees about opening another office squares with the finding that Montplaisir was working with other co-workers to set up a new office. Other than citing to RSA 275-E:2, I(b), the decision does not contain significant legal analysis. In particular, the decision does not explain whether the facts require the application of a pretext or mixed motive analysis. Absent an explanation for the contradictory findings and decision, we are unable to review the hearing officer's decision.

We therefore vacate the hearing officer's decision and remand this case for appropriate findings of fact and rulings of law consistent with this opinion.

While this analysis disposes of the first three issues raised by Montplaisir, she also argues that she was denied a fair hearing when the hearing officer allowed Dr. Roofeh to refuse to answer certain questions on cross-examination. The hearing officer has discretion to determine the scope of cross-examination. *See* RSA 541-A:33, II (1997); *see also Petition of Betty Sprague*, 132 N.H. 250, 259-60 (1989). Each party may conduct cross-examination to elicit a full and true disclosure of the facts. RSA 541-A:33, IV (1997). "The burden is on the party seeking admission of the evidence to make a contemporaneous offer of proof and to create a sufficient record for our review on appeal, *i.e.*, a record that sets forth the specific basis for admissibility of the proffered evidence; mere conclusory assertions or speculation ... are not sufficient to meet that burden." *Bohan v. Ritzo*, 141 N.H. 210, 218 (1996).

During Dr. Roofeh's cross-examination, Montplaisir's counsel attempted to establish that Montplaisir had observed and could testify before the grand jury to suspicious actions by Dr. Roofeh suggesting that Dr. Roofeh knew Dr. Willitts' location while he was being sought by federal and State authorities. Montplaisir's counsel questioned Dr. Roofeh about whether her house furniture was packed up and loaded onto a truck, and whether a co-worker was storing Dr. Willitts' items at her request. Dr. Roofeh answered these questions in the negative, but admitted she had loaded boxes of medical supplies onto a truck for shipment to Dr. Willitts' son in Florida. When Montplaisir's counsel continued to question Dr. Roofeh about what was in the truck and why was the truck there, Dr. Roofeh's attorney instructed her not to answer any further questions regarding the movement of the boxes and their contents. At this point, counsel for Montplaisir made an offer of proof, stating that "anything ... [Montplaisir] knew that Dr. Roofeh was doing that was illegal, that Dr. Roofeh knew [Montplaisir] knew ... is a catalyst for motivation for termination."

This offer of proof did not establish how further questioning of Dr. Roofeh would elicit testimony that was new or different from what she had

already said. Dr. Roofeh's testimony indicated that the boxes were full of medical supplies and were being transported to Florida. The questions that were objected to merely covered the same topic again. Thus, Montplaisir failed to carry her burden of creating a sufficient record for review on appeal. *See Bohan*, 141 N.H. at 218.

Montplaisir also claims error because Dr. Roofeh's counsel instructed Dr. Roofeh not to answer a question about a copy of an envelope from Belize. The record, however, shows that when the question was rephrased, Dr. Roofeh answered that she did not recall receiving that particular envelope from Belize. Thus, Dr. Roofeh ultimately answered the petitioner's question, and any error was harmless.

*Vacated and remanded.*

NADEAU and DALIANIS, JJ., concurred.