NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2016-0122


BEVERLY A. CLUFF-LANDRY

v.

ROMAN CATHOLIC BISHOP OF MANCHESTER

Argued: November 16, 2016
Opinion Issued: February 24, 2017


Law Office of Leslie H. Johnson, PLLC, of Center Sandwich (Leslie H. Johnson on the brief and orally), and Purcell Law Office, PLLC, of Portsmouth (Ellen Purcell on the brief), for the plaintiff.


Preti, Flaherty, Beliveau & Pachios, PLLP, of Concord (Peter G. Callaghan and Gregory L. Silverman on the brief, and Mr. Callaghan orally), for the defendant.


CONBOY, J. The plaintiff, Beverly A. Cluff-Landry, appeals an order of the Superior Court (Garfunkel, J.) granting the motion to dismiss of the defendant, Roman Catholic Bishop of Manchester d/b/a St. Christopher School (the school). We affirm.

I.  Background

We assume the following facts, as alleged in the plaintiff's complaint, to be true.  In 2008, the plaintiff was hired by the school's former principal to work at the school for the 2008-2009 academic year as a pre-kindergarten (Pre-K) teacher and a teacher of visual arts.  Her teaching contract was renewed annually in 2009, 2010, and 2011.  The principal left the school at the end of the 2010-2011 school year, and in August 2011, the school hired a new principal.

Two new students enrolled in the Pre-K program at the beginning of the 2011-2012 academic year, each of whom exhibited defiant behaviors, including "daily kicking, hitting, slapping, punching, spitting, biting, screaming, throwing things, and verbal abuse."  One of these students left the school in October 2011, but the other student remained in the Pre-K program.

In November 2011, the plaintiff reported to the principal "her concerns that the school was not adequately set up to handle [the student] due to his unsafe behaviors and the school's inability to keep the other students safe, and that the behavior was in violation of the student-parent handbook."  In response to the plaintiff's concerns, the principal "simply laughed."  The plaintiff continued to complain to the principal about the student, but the principal took no action.  The principal "insisted that the defiant student was just very young and simply needed to repeat Pre-K."

Thereafter, the principal began taking actions that the plaintiff characterizes as retaliation against her.  For example, the plaintiff describes a January 27, 2012 incident, when the principal entered the plaintiff's classroom approximately 45 minutes before the start of the school day, while the plaintiff was readying the room, and "began talking in a very loud voice" about an incident that occurred the previous day involving the defiant student.  Despite the plaintiff telling the principal that she was not present for the incident, the principal "continued to talk in a loud voice" to the plaintiff repeating, "I've got to get to the bottom of this."  (Quotations omitted.)  The plaintiff left and went to sit in her car; upon returning to the classroom at the time she would normally report to work, she was told that the principal had called a substitute teacher to replace her for the day.

Later that month, after the parents of a student complained that the defiant student was bullying their daughter, the principal expelled the defiant student.  Thereafter, the principal's alleged retaliation toward the plaintiff "escalated."  On February 3, the principal issued the plaintiff a "letter of insubordination" for the events on January 27.  On February 22, the principal placed the plaintiff on a "Teacher Improvement Plan."  In March, the principal began observing the plaintiff teach in the classroom.  On April 13, the principal gave the plaintiff her "Lesson Observation" report in which she stated that the

plaintiff: "needs to work on her ability to develop strategies for student behavior issues," "must take responsibility for what happens in her classroom, as far as student behavior," and "has difficulty working with other teachers and teacher aids when they are in her classroom." (Quotations omitted.)

On April 15, the principal sent the plaintiff a letter that stated: "Please be advised that I am unable to offer you a teaching position at St. Christopher School for the school year 2012-2013. Accordingly, any and all mutual contractual teaching obligations will expire on or before June 30, 2012." The plaintiff continued to work for the remainder of the 2011-2012 academic year. Her last day of work was on June 15, 2012.

Thereafter, "concerned [the school] was giving her a bad reference when [she] was applying for jobs," the plaintiff hired a "reference company," Allison & Taylor, Inc. (A&T), "to do a reference check." On August 5, 2014, A&T contacted the principal. During the conversation, the principal told A&T that the plaintiff: "didn't really leave on good terms," "didn't get along with her peers and had trouble in the classroom," "was put on a plan in the end" and her contract was not renewed. (Quotations omitted.)

In May 2015, the plaintiff sued the school, alleging: (1) a violation of the New Hampshire Whistleblowers' Protection Act, RSA chapter 275-E:2 (2010 & Supp. 2016) (Act), by failing to renew her contract after she reported violations of school and public policies; (2) wrongful discharge, for failing to renew her contract; and (3) slander, based upon the principal's comments to A&T. The school moved to dismiss, arguing that: (1) the plaintiff's factual allegations are insufficient to support a violation of the Act; (2) the wrongful discharge claim is barred by the statute of limitations, and also fails because the plaintiff's employment was governed by a one-year contract; and (3) the alleged defamatory statements are not actionable because the plaintiff consented to their publication. Following a hearing, the trial court granted the school's motion. The plaintiff unsuccessfully sought reconsideration, and this appeal followed.

II. Standard of Review

In reviewing a trial court's grant of a motion to dismiss, we consider "whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." Sanguedolce v. Wolfe, 164 N.H. 644, 645 (2013). We assume the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to her. Id. However, we need not assume the truth of statements in the plaintiff's pleadings that are merely conclusions of law. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. Id.

3

III. Whistleblowers' Protection Act

The plaintiff first argues that the trial court erred in dismissing her whistleblower claim under the Act. The plaintiff asserts that she "sufficiently alleged violations" of the Act because she "reported assaults of students and teachers, an unsafe workplace that was unsafe for students," and that the Act "covers such reports, particularly where the Defendant has a duty to step in and prevent assaults, bullying, and injuries to staff." (Bolding omitted.) The school counters that, in her complaint, the plaintiff "made no mention of any law or rule but focused solely on the school's policies," and that "[t]here was no . . . allegation . . . suggesting that the Plaintiff believed any actual law or rule was violated by the four-year-old or the school."

The Act provides in pertinent part:

> No employer shall harass, abuse, intimidate, discharge, threaten, or otherwise discriminate against any employee regarding compensation, terms, conditions, location, or privileges of employment because:

> (a) The employee, in good faith, reports or causes to be reported, verbally or in writing, what the employee has reasonable cause to believe is a violation of <u>any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States</u>.

RSA 275-E:2, I(a) (emphasis added).

To survive the motion to dismiss, the plaintiff must have alleged facts in her complaint that show that: (1) she "engaged in an act protected by" the Act; (2) she "suffered an employment action proscribed by" the Act; and (3) "there was a causal connection between the protected [conduct] and the proscribed employment action." <u>Appeal of Seacoast Fire Equip. Co.</u>, 146 N.H. 605, 608 (2001). RSA 275-E:2 "does not require an actual violation of a law or rule but only that an employee reasonably believe that such a violation has occurred." <u>Appeal of Smithfield Dodge</u>, 145 N.H. 23, 26 (2000). "Whether an employee had 'reasonable cause to believe' is an objective question; namely, whether a reasonable person might have believed that the employer was acting unlawfully." <u>Appeal of Osram Sylvania</u>, 142 N.H. 612, 618 (1998) (quotation omitted).

A private employer's internal policies or procedures do not constitute a "law or rule" adopted under the laws of a state or the United States for purposes of a whistleblower claim. <u>See, e.g.</u>, <u>Nichols v. Metro. Center for Independent Living</u>, 50 F.3d 514, 517 (8th Cir. 1995) (explaining that an employee's complaint concerned a change in her employer's management

4

policies, not a violation of the law within the meaning of Minnesota's whistleblower retaliatory discharge statute; "the public does not have an interest in a business's internal management problems" (quotation and brackets omitted)); University of Houston v. Barth, 403 S.W.3d 851, 856 (Tex. 2013) (holding that a university's internal administrative policies cannot form the basis for a report of a violation of law because they are not "rules adopted under a statute" as required by the Texas Whistleblower Act (quotation and brackets omitted)); Mullins v. Dallas Independent School Dist., 357 S.W.3d 182, 188 (Tex. App. 2012) (stating that complaints alleging violations of an employer's internal procedures and policies will not support a claim under the state's statute); cf. Frevert v. Ford Motor Co., 614 F.3d 466, 474 (8th Cir. 2010) (explaining that employee's allegations in his writ of "violations of Company policy" were insufficient to establish a common law claim for wrongful termination against public policy).

The plaintiff's complaint alleges that she "reasonably believed" that she reported violations of the "school's policies and procedures" and violations of "other public policies such as assault." According to her allegations, in November 2011, the plaintiff reported to the principal "her concerns that the school was not adequately set up to handle [the defiant student] due to his unsafe behaviors and the school's inability to keep the other students safe, and that the behavior was in violation of the student-parent handbook." The complaint further alleges that the plaintiff "continued to complain to [the principal] about the disruption in the classroom and the unsafe environment due to the defiant student's behavior."

We agree with the trial court that, to the extent the plaintiff's whistleblower claim is based upon her reports of violations of the school's internal policies, such as the school's student-parent handbook, she has failed to allege facts that show that she engaged in an act protected by the Act. Cf. Appeal of Seacoast Fire Equip. Co., 146 N.H. at 606-07 (employee reported illegal dumping of fire extinguisher residue and wage law violations); Appeal of Fred Fuller Oil Co., 144 N.H. 607, 609 (2000) (employee reported employer's violation of statutes and regulations limiting the number of hours a commercial driver may work); Appeal of Osram Sylvania, 142 N.H. at 614-15 (employee filed a safety complaint that temperatures at the employer's production plant were excessive in violation of the federal Occupational Safety and Health Act).

We also agree with the trial court that, to the extent the plaintiff's claim is based upon her report of an "assault," a reasonable employer would not have understood her complaint to constitute a "report" that the child had violated the simple assault statute, RSA 631:2-a (2016). See Appeal of Fred Fuller Oil Co., 144 N.H. at 611 (we consider a "report" under the Act to have been made "if a reasonable employer would have understood from an employee's complaint that the employee was reciting a violation of law"). As the trial court reasoned,

[t]he disruptive student at issue in this case was four years old. The complaint does not suggest in any way that the plaintiff made clear to [the principal] that she believed the four-year old's conduct was a violation of a criminal statute. Simply put, a reasonable principal would not believe that an experienced teacher's complaints of a four-year-old student's disruptive behavior should be construed as a report of a violation of the law. In fact, in the complaint, the plaintiff states that she only referenced the student-parent handbook and the school's internal policies—and not the criminal code—when she made the complaints.

The plaintiff further asserts that because, "[w]hen reporting an alleged violation, an employee is not required to expressly identify the law allegedly violated," her "reports should reasonably have been understood" by the school to encompass violations of "Department of Education regulations," the Pupil Safety and Violence Prevention statute, see RSA ch. 193-F (2008 & Supp. 2016), and the Workers' Compensation Law, see RSA ch. 281-A (2010 & Supp. 2016). (Bolding omitted.) Although the plaintiff concedes that RSA chapter 193-F applies only to public schools, she contends that "New Hampshire Board of Education rules" require non-public accredited schools "to adopt grievance policies" concerning bullying, citing, specifically, New Hampshire Administrative Rules, Ed 403.01(a)(2)(o)(1). (Bolding omitted.) However, that rule simply requires that, as part of the application for initial approval as a non-public school for attendance purposes, an applicant must provide a letter of intent that includes, among other things, a "copy of the school's grievance policy including . . . procedures to address complaints" concerning bullying. N.H. Admin. R., Ed 403.01(a)(2)(o)(1). Even assuming that rule applies in this case, the plaintiff does not argue that the school failed to comply with it.

We, likewise, reject the plaintiff's contention that she reasonably believed she was reporting a violation of the Workers' Compensation Law. RSA 281-A:64, I, requires that employers provide employees with "safe employment," including "furnishing personal protective equipment, safety appliances and safeguards" and "adopting work methods and procedures which will protect the life, health, and safety of the employees." RSA 281-A:64, I (Supp. 2016). The trial court explained that "[t]he general purpose of RSA 281-A:64, I[,] is to force employers to provide employees with proper equipment and attire, as well as to create safety protocols to combat inherently unsafe working conditions." The trial court correctly reasoned that it "cannot infer from the face of her complaint that the plaintiff believed she was reporting a violation of the Workers' Compensation Statute," that the plaintiff did not allege in her complaint that "the four-year-old student's 'assaults' jeopardized her safety or the safety of other employees," and that "under the pleaded facts, no reasonable employer would believe that the plaintiff was complaining of a violation of the Workers' Compensation Statute."

6

The plaintiff did not plead any facts in her complaint to support her argument that a reasonable employer would have understood that she was reporting a violation of anything other than the school's "policies and procedures" and "other public policies such as assault." At most, the plaintiff has alleged issues related to internal management matters. The trial court gave the plaintiff an opportunity to amend her complaint "to clarify [her] claims or to correct deficiencies before dismissal has preclusive effect," but she declined to do so. Accordingly, limiting our review to the well-pleaded allegations of fact in the plaintiff's complaint, and construing all reasonable inferences from them in her favor, see Ojo v. Lorenzo, 164 N.H. 717, 724 (2013), we conclude that the facts she alleged do not, as a matter of law, establish that she "engaged in an act protected by" the Act. Appeal of Seacoast Fire Equip. Co., 146 N.H. at 608.

IV. Wrongful Discharge

The plaintiff next argues that the trial court erred in granting the school's motion to dismiss her wrongful discharge claim because it is barred by the three-year statute of limitations. See RSA 508:4, I (2010) ("all personal actions . . . may be brought only within 3 years of the act or omission complained of"). She asserts that her cause of action "did not begin to accrue until at least June 15, 2012 when she was separated from work, and therefore she timely filed her claim on May 13, 2015."

"Statutes of limitation place a limit on the time in which a plaintiff may bring suit after a cause of action accrues." Beane v. Dana S. Beane & Co., 160 N.H. 708, 712 (2010) (quotation and ellipsis omitted). A cause of action arises, thereby triggering the running of the three-year period, once all of the elements necessary for that claim are present. Id.

The plaintiff's complaint alleges that she was wrongfully discharged by the school because her "teaching contract should have been renewed for the following academic year and into the future," but that "[a]s a result of [her] actions, and refusals to act contrary to policy and law, [she] was non-renewed (i.e. discharged) from her employment on or about June 30, 2012." The trial court, in dismissing her claim, reasoned that

> [i]n this case, the plaintiff's wrongful discharge claim is premised on the School's decision not to renew her contract. The plaintiff was notified on April 15, 2012, that her contract would not be renewed for the 2012-2013 school year. On that date, she also knew, or, based upon her complaint, had reason to believe, that the School's decision was in bad-faith and was based on her decision to report the behavior of the disruptive student. Thus, on April 15, [2012], the plaintiff's wrongful discharge claim, to the extent she ever had one, accrued.

7

We agree. The plaintiff's claim, as framed in her complaint, is based upon her contract being "non-renewed" by the school. Her cause of action, therefore, accrued on April 15, 2012, when all of the elements necessary for the claim were present. See Beane, 160 N.H. at 712. We are not persuaded by her characterization of her claim as one for wrongful termination. See Jeffery v. City of Nashua, 163 N.H. 683, 688 (2012) (noting in dicta that, in contrast to a constructive discharge claim as to which the cause of action accrues when the employee tenders his or her resignation, in a wrongful termination action, the claim accrues upon the employee's separation from employment). Because the plaintiff did not initiate her action until May 13, 2015, approximately one month after the limitations period had run, the trial court correctly concluded that her claim was time-barred.

V. Slander

Finally, the plaintiff argues that the trial court erred in granting the school's motion to dismiss her slander claim on the basis that she "invited the slander by hiring a reference company to find out what the [school] was stating about her," because, according to the plaintiff, "[t]here is no exception for 'invited' slander in New Hampshire law." (Bolding omitted.) "To survive the motion to dismiss, the plaintiff must have alleged facts that would show that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about [her] to a third party." Sanguedolce, 164 N.H. at 645-46 (quotation omitted).

The plaintiff alleges in her complaint that she "hired . . . [A&T] to do a reference check" and that A&T spoke with the principal, who stated that the plaintiff "didn't really leave on good terms," "didn't get along with her peers and had trouble in the classroom," "was put on a plan in the end" and her contract was not renewed. (Quotations omitted.) These allegedly defamatory statements were, she claims, "made to one or more third parties, who understood the statements' defamatory meaning."

The trial court dismissed the plaintiff's claim, explaining that "[i]t is axiomatic that 'invited defamation,' or the issuance of a defamatory statement wherein the injured party precipitated the statement's release, is not actionable." (Quotation omitted.) The court reasoned that, "in this case, the plaintiff admits in her complaint that she hired A&T to 'do a reference check'," and, "[a]lthough not explicitly stated in the complaint, one can infer from it that the plaintiff directed A&T to contact the school." Thus, the trial court concluded that "any statements made by [the principal] to A&T are not actionable as slander because they were invited by the plaintiff."

The school argues that the plaintiff "[does] not cite to one decision supporting her position that she should be permitted to bring an action when she procures statements made to her agent that she considers defamatory." As

8

the school correctly states, the trial court's decision is supported by "decisions from state and federal courts across the country uniformly holding a plaintiff may not bring a claim for slander when she invites or procures the very statements that form the basis of the claim." See, e.g., Kelewae v. Jim Meagher Chevrolet, Inc., 952 F.2d 1052, 1054, 1055 (8th Cir. 1992) (holding that when plaintiff requested his stepson and a friend each telephone the defendant posing as a prospective employer, the defendant's "allegedly defamatory statements . . . cannot form the basis of a defamation suit because the statements were solicited by agents of the plaintiff"); Litman v. Massachusetts Mut. Life Ins. Co., 739 F.2d 1549, 1560 (11th Cir. 1984) (when the plaintiff invited the alleged defamation, the statement is not a "publication" under Florida law); Long v. Quorum Health Resources, LLC, No. 2:13-CV-189, 2014 WL 1795156, at *7 (D. Vt. 2014) (explaining that "'invited defamation,' or the issuance of a defamatory statement wherein the injured party precipitated the statement's release, is not actionable" (quotation omitted)), aff'd, 590 F. App'x 103 (2d Cir. 2015); Martinez v. New England Medical Center Hospitals, 307 F. Supp. 2d 257, 263, 269 (D. Mass. 2004) (granting summary judgment to the defendant on plaintiff's defamation claim in part because she invited the defendant's statements by having a friend pose as a prospective employer seeking references); Beck v. Tribert, 711 A.2d 951, 959-60 (N.J. Super. Ct. App. Div. 1998) (concluding that the trial court did not erroneously dismiss plaintiff's slander claim when plaintiff's friends posed as prospective employers; "plaintiff should not be permitted to sue for the injury he . . . invited" (quotation and brackets omitted)); Georgia Power Co. v. Busbin, 289 S.E.2d 514, 515 (Ga. 1982) (holding that there can be no recovery for invited libel; "[i]t is enough that the complainant requests or consents to the presence of a third party and solicits the publication of matter which he knows or has reasonable cause to suspect will be unfavorable to him"); Pressley v. Continental Can Co., Inc., 250 S.E.2d 676, 678 (N.C. Ct. App. 1979) (stating that "[a] publication of a libel, procured or invited by the plaintiff, is not sufficient to support an action for defamation").

We agree with these authorities and conclude that, because the principal's allegedly defamatory statements were invited by the plaintiff in that, as she admits in her complaint, she hired A&T to obtain them, the trial court properly dismissed her slander claim.

The plaintiff also argues that the trial court erred when it "failed to draw the inference, based on facts [she] alleged," that it was "likely that [the principal] made similar statements to others." (Capitalization and bolding omitted.)  The trial court rejected this argument, explaining that "[i]n evaluating the sufficiency of claims of slander, courts have required that the complaint adequately identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." (Quotation and brackets omitted.)  Here, because "[t]he complaint only makes sufficiently

9

specific allegations with regard to the statements made to A&T," the trial court concluded that the plaintiff's claim that it was "likely" the principal made "similar statements to others," "is pure speculation not accompanied by sufficiently pleaded facts." See Knox v. Cnty. of Ulster, No. 1:11-CV-0112 (GTS/CFH), 2013 WL 286282, at *15 (N.D.N.Y. Jan. 24, 2013) (granting defendants' motion to dismiss plaintiff's slander claim where plaintiff failed to specifically identify who made the statement, to whom the statement was made or when it was made); Doug Grant, Inc. v. Greate Bay Casino Corp., 3 F. Supp. 2d 518, 538 (D.N.J. 1998) (explaining that, in a complaint charging defamation, plaintiff must plead facts sufficient to identify the allegedly defamatory words, their utterer and the fact of their publication; a "vague conclusory allegation is not enough" (quotation omitted)), aff'd as modified, 232 F.3d 173 (3d Cir. 2000); McGuire v. Adkins, 226 So. 2d 659, 661 (Ala. 1969) (concluding that a slander claim is insufficient where the complaint fails to state where and to whom the slander was published).

The plaintiff's complaint fails to identify any specific statement made by the defendant about her to any specific third parties other than A&T. Without any facts in her complaint identifying who the "others" were, when the statements were made, or the substance of the statements, the plaintiff has failed to "allege[ ] facts that would show that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about [her] to a third party." Sanguedolce, 164 N.H. at 645-46 (quotation omitted). Accordingly, we affirm the trial court's finding that, to the extent the plaintiff's slander claim is premised upon the statements made to parties other than A&T, the complaint fails to sufficiently state a claim.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.