Rockingham
No. 92-340

GERTRUDE M. PETERSON

v.

LAWRENCE N. GRAY, M.D.

July 2, 1993

*Nixon, Hall & Hess, P.A.*, of Manchester (*David L. Nixon & a.* on the brief, and *Francis G. Murphy* orally), for the plaintiff.

*Ransmeier & Spellman Professional Corporation*, of Concord (*Steven E. Hengen & a.* on the brief, and *Mr. Hengen* orally), for the defendant.

JOHNSON, J. The plaintiff, Gertrude M. Peterson, sued the defendant, Lawrence N. Gray, M.D., for medical malpractice. Following a jury verdict for the defendant, the plaintiff moved to set it aside and for judgment notwithstanding the verdict. The Superior Court (*Gray*, J.) denied the motions, and the plaintiff appeals, arguing that the jury's verdict was against the great weight of the evidence and that the trial court's instructions were erroneous. We agree that the court's charge to the jury contained erroneous instructions on the issues of proximate cause and aggravation of pre-existing conditions. Accordingly, we reverse and remand for a new trial.

The plaintiff sought treatment from the defendant, a hand surgeon, because she was experiencing pain in her left hand. The defendant diagnosed arthritis in her carpal metacarpal joint, as well as de Quervain's disease, a type of tendonitis. To relieve the pain caused by the arthritis, the defendant recommended and performed a trapeziectomy—that is, the removal of the trapezium, one of eight bones in the wrist—and filled the space with folded tendons in a procedure known as the "anchovy procedure" because the tendons are folded over like anchovies. Following the operation, another wrist bone, the scaphoid, rotated into the space where the trapezium had

been, despite the "anchovy procedure," causing the plaintiff's wrist to collapse and necessitating the fusion of her wrist bones. The plaintiff can now use her left hand only in an "assistive" capacity.

Both parties agree that, during the course of the trapeziectomy, the defendant initially misidentified the scaphoid as the trapezium and mistakenly severed at least three ligaments that connected the scaphoid to two neighboring bones, the lunate and the radius. At trial, the defendant testified that he quickly recognized and repaired his mistake, causing the plaintiff no ill effects. The plaintiff, on the other hand, questioned the effectiveness of the defendant's repair and argued that the error amounted to negligence and proximately caused the collapse of her wrist. The defendant denied the plaintiff's allegations, maintaining that the wrist collapse was an inherent risk of the medically accepted trapeziectomy.

At the close of the evidence, the trial court instructed the jury as to the elements of the plaintiff's case, including proximate cause. The trial court's instruction on proximate cause was particularly important in this case because there was no question that the plaintiff had a pre-existing condition relative to her left wrist. The trial court initially defined proximate cause as follows:

> "An injury or damage is proximately caused by an act or a failure to act whenever you judge from the evidence in the case that the act or omission probably played a substantial part in bringing about or actually causing the injury, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission."

Although the court occasionally spoke of the plaintiff's burden to prove "that the defendant's act or failure to act was a substantial factor in bringing about the alleged injury," the court twice instructed the jury not to award damages to the plaintiff unless she proved that the defendant's actions were "*the* proximate cause" of her injuries. (Emphasis added.) Regarding the plaintiff's pre-existing wrist problems, the trial court stated:

> "Should you have occasion to consider the issue of damages in this case, you may not include in the award any amount to cover any physical condition which pre-existed the events complained of. You may only consider those injuries which you find to have been a natural and probable consequence of the defendant's fault, if any."

The plaintiff objected to the court's causation instructions, maintaining that they implied the plaintiff could only recover damages if she

proved that the defendant's mistake was the sole cause of her injuries. In response, the trial court gave the following instruction:

> "Did the defendant breach the standard of care, and were those injuries—was that breach a substantial cause of the injuries and the damages of which she presently complains, *keep in mind with respect to her prior injuries or the status of her health.* If you find such—for whatever degree you may find the prior condition of her health, while that—they're not a factor in this case; *anyone takes someone as they find them.* So that prior injuries *may or may not* figure in, if you find—if you further first find negligence, *you may find that prior injuries were aggravated by or prior conditions were aggravated by that negligence. That's okay for you to do that,* if you do that—you choose to do that; but you must find, to award a verdict for the plaintiff in this case—you must find that she has met her burden of proof as to the fact that—if you find that fact as to the doctor's negligence, in accordance with that standard of care I gave you, as to the causation and as to the damages."

(Emphasis added.) The plaintiff objected to this statement of the law, too, but the trial court gave no further instructions. The jury returned a verdict for the defendant, and the plaintiff appealed, arguing as she did below that the trial court erroneously instructed the jury on the issues of proximate cause and aggravation of pre-existing conditions.

 The standards for reviewing a court's jury instructions are well established. "The purpose of jury instructions is to identify the factual issues which are material for a resolution of the case, and to inform the jury of the appropriate standards by which they are to decide them." *Johnston v. Lynch,* 133 N.H. 79, 89, 574 A.2d 934, 940 (1990). "It [is] the duty of the Trial Court to fully and correctly instruct the jury as to the law applicable to the case . . . ." *Cyr v. Sanborn,* 101 N.H. 245, 250, 140 A.2d 92, 96 (1958). Accordingly, "the test for determining whether an erroneous civil jury charge is reversible error is whether the jury *could have been misled*" into basing its verdict on a misperception of the law. *Bernier v. Demers,* 121 N.H. 217, 218, 427 A.2d 514, 515 (1981). "It is not necessary that a court use the exact words of any party's request. Rather, the test of adequacy of any charge is whether, taken as a whole, it fairly presented the case to the jury in such a manner that no injustice was done to the legal rights of the litigants." *Rawson v. Bradshaw,* 125

N.H. 94, 100, 480 A.2d 37, 41 (1984) (citation and quotation omitted). After reviewing the trial court's charge as a whole, we conclude that the jury could have been misled by the court's instructions and that an injustice was done to the legal rights of the plaintiff.

██ ██ Examining the instructions relating to proximate cause first, we note the principle that a defendant's negligence need not be "the sole cause" of a plaintiff's injuries to warrant an award of damages. *See* W. KEETON *et al.*, PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 266 (5th ed. 1984). "It is for this reason that instructions to the jury that they must find the defendant's conduct to be 'the sole cause,' or 'the dominant cause,' or 'the proximate cause' of the injury are rightly condemned as misleading error." *Id.* The trial court here twice stated that the plaintiff had to prove the defendant's actions were "*the* proximate cause" of her injuries before she would be entitled to damages. Although the court also used the words "*a* proximate result" and "*a* substantial factor," the court never explained the basic principle that a plaintiff does not have to show that a defendant's negligence was the sole cause of his or her injuries.

██ We find that the jury could have been misled by these instructions. *Bernier*, 121 N.H. at 218, 427 A.2d at 515. The question of causation was undoubtedly the crucial issue in this case, and no one disputed that the defendant operated on the plaintiff's hand because she had arthritis. In the chain of causation leading to her wrist fusion, the plaintiff's pre-existing arthritis obviously played a major part. But if the jury determined that the plaintiff's arthritis was "*a* proximate cause" of her wrist fusion, then the defendant's actions could not possibly have been "*the* proximate cause." The court's instructions thus encouraged the jury to find for the defendant even if the plaintiff met her burden of proving that his error was a proximate cause of the wrist fusion. As the instructions could have misled the jury into such faulty reasoning, we hold that an injustice was done to the legal rights of the plaintiff, warranting reversal. *See Rawson*, 125 N.H. at 100, 480 A.2d at 41.

We next turn to the court's instructions regarding aggravation of pre-existing conditions and find that, like the instructions on proximate cause, they did not fairly state the law and could have misled the jury. The court's first instructions on the issue did not define the plaintiff's right to recover for the aggravation of a pre-existing condition at all, *see Valliere v. Filfalt*, 110 N.H. 331, 332–33, 266 A.2d 843, 844–45 (1970), but merely stated that "you may not include in the award any amount to cover any physical condition which pre-

existed the events complained of. You may only consider those injuries which you find to have been a natural and probable consequence of the defendant's fault, if any." While correct, this instruction is misleading because it explains only the defendant's half of the aggravation of injury doctrine. *See* 2 M. MINZER *et al.*, DAMAGES IN TORT ACTIONS § 15.41, at 15-119 to -120, § 15.43[5], at 15-128 (1989).

The court's supplemental instructions, apparently given to meet the plaintiff's objections, appear to have confused the issue further. *Cf. State v. Pinardville Athletic Club*, 134 N.H. 462, 468, 594 A.2d 1284, 1287–89 (1991) (no error in trial court's charge where possibly ambiguous language was later clarified). The court told the jury that prior injuries are "not a factor in this case," but then stated that "prior injuries may or may not figure in." The court also admonished the jury to "keep in mind with respect to her prior injuries or the status of her health," but did not explain the effect the prior injuries should have on the jury's determination of liability or damages. Similarly, the court stated, without elaboration, "you may find that . . . prior conditions were aggravated by that negligence. That's okay for you to do that . . . ." Finally, although the jury was informed that "anyone takes someone as they find them," this legal catch phrase for the aggravation of injury doctrine, *see* MINZER, *supra* § 15.01, at 15-6, was never deciphered for the lay jurors.

We conclude that the court did not fairly and adequately explain the law and could have misled the jurors into believing they could withhold recovery for the plaintiff if they found that her present injuries stemmed from a pre-existing condition. As the plaintiff admitted that she sought treatment from the defendant because of a pre-existing condition, the court's instructions on the aggravation of injury doctrine unfairly prejudiced the case against her and thus caused an injustice to her legal rights. *See Rawson*, 125 N.H. at 100, 480 A.2d at 41. Accordingly, we reverse.

*Reversed and remanded.*

All concurred.