Rockingham
No. 94-696

JAMES BOHAN

v.

JAMES AND CAROL RITZO

July 19, 1996

*McLane, Graf, Raulerson & Middleton, P.A.*, of Portsmouth (*David Wolowitz* and *J. Kirk Trombley* on the brief, and *Mr. Trombley* orally), for the plaintiff.

*Dean, Rice & Howard, P.A.*, of Manchester (*Timothy S. Reiniger* on the brief and orally), for the defendants.

BROCK, C.J. This appeal follows a Superior Court (*Coffey*, J.) jury verdict in favor of the plaintiff, James Bohan, for injuries occasioned by a dog owned by the defendants, James and Carol Ritzo. We affirm.

The following facts were adduced at trial. On January 12, 1993, the plaintiff was riding his bicycle on Clough Drive in Portsmouth. As he was passing in front of the defendants' house, he suddenly saw a small white dog about two feet away coming toward him from the

defendants' driveway. Afraid the dog was coming toward his right leg to bite him, the plaintiff instinctively stuck his right leg out to ward off the dog. At the same time, the plaintiff looked down and to the right, toward the dog, and removed his right hand from the handlebar. The plaintiff then lost his balance and fell, as the front tire of the bicycle jackknifed. The entire incident took only a matter of seconds. The dog never bit or made physical contact with the plaintiff.

The plaintiff suffered severe injuries, including several broken bones which had to be repaired through complex surgery. The surgeon used screws and wires to hold his arm together, and had to operate a second time because the metal implants were interfering with the plaintiff's range of motion. The plaintiff was out of work for seven and one-half months after this fall and underwent many hours of physical therapy, some of which was quite painful.

The plaintiff brought an action against the defendants under RSA 466:19 (1992) (amended 1995), which imposes strict liability upon dog owners for damages occasioned by their dogs. The defendants moved to dismiss, arguing that the facts alleged in the writ did not constitute a legal basis for relief under RSA 466:19. The trial court denied the motion. The trial court also denied the defendants' motion for nonsuit, made after the plaintiff's opening statement. Prior to trial, the plaintiff moved *in limine* to exclude evidence of his prior bicycle accident and other work-related injuries. The court granted this motion. The court denied the defendants' request, during trial, to introduce three of the plaintiff's tax returns into evidence. Finally, the defendants requested jury instructions and a special verdict form, all of which sought to apply the comparative fault statute, RSA 507:7-d (Supp. 1995), to the plaintiff's claim. These motions were denied. The jury found the defendants liable under RSA 466:19 and awarded the plaintiff $190,000.

On appeal, the defendants argue that the trial court erred: (1) in denying their motions to dismiss and for nonsuit with respect to the scope of RSA 466:19; (2) in refusing to grant their request for jury instructions and special verdict form regarding comparative fault under RSA 507:7-d; (3) in excluding from evidence the plaintiff's prior bicycle accident and his work-related injuries; and (4) in excluding from evidence the plaintiff's three income tax returns.

*I. Scope of RSA 466:19*

The denial of a motion to dismiss is proper if the plaintiff's allegations are "reasonably susceptible of a construction that would permit recovery." *Wenners v. Great State Beverages,* 140 N.H. 100, 102, 663 A.2d 623, 625 (1995) (quotation omitted), *cert. denied,* 116

S. Ct. 926 (1996). We assume the truth of all well-pleaded facts alleged by the plaintiff and construe all inferences "in the light most favorable to the plaintiff." *Id.* The scope of review is essentially the same for a motion for nonsuit. *Cf. Renovest Co. v. Hodges Development Corp.*, 135 N.H. 72, 75–76, 600 A.2d 448, 450–51 (1991) (stating standard of review for motion for nonsuit at close of plaintiff's case in a bench trial).

RSA 466:19 provides: "Any person to whom . . . damage may be occasioned by a dog not owned or kept by him shall be entitled to recover such damage of the person who owns or keeps the dog . . . ." We have held that the statute makes a dog owner strictly liable for harm caused by a dog's "vicious or mischievous acts." *Allgeyer v. Lincoln*, 125 N.H. 503, 506, 484 A.2d 1079, 1081 (1984).

■ The defendants assert that their motion to dismiss the writ and their motion for nonsuit after the plaintiff's opening statement should have been granted because a simple encounter with a dog is insufficient to support a claim under RSA 466:19. The plaintiff's allegations, together with the inferences reasonably drawn therefrom, meet the standard of mischievousness. *See Allgeyer*, 125 N.H. at 506, 484 A.2d at 1081. Both the plaintiff's writ and opening statement set forth facts which, if believed by the jury after hearing the evidence, would be sufficient to establish a claim under RSA 466:19; namely, that the defendants' dog mischievously ran toward the plaintiff's leg as if to bite him, resulting in the plaintiff's reacting instinctively, falling, and badly injuring himself. We reject the defendants' argument that the plaintiff could not prevail unless the scope of liability under RSA 466:19 is extended to instances where an individual was simply "distracted" by the mere presence of a dog. The plaintiff did not rely on the "mere presence" of the dog; he alleged specific mischievous actions by the animal that were causally related to his injuries.

■ We also reject the defendants' argument that RSA 466:19 requires an actual bite or other direct physical contact. "When construing the meaning of a statute, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of Astro Spectacular*, 138 N.H. 298, 300, 639 A.2d 249, 250 (1994) (quotations and citation omitted). "Courts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include. The legislative intent is to be found not in what the legislature might have said, but rather in the meaning of what it did say." *Id.* (quotations, citation, and bracket omitted).

■■ Nothing in the plain language of RSA 466:19 limits its application to situations where there is an actual bite or other direct physical contact. The statute simply makes dog owners strictly liable to "[a]ny person to whom . . . damage may be occasioned by a dog not owned or kept by him." RSA 466:19. If the legislature intended to limit strict liability to cases where a dog's vicious or mischievous acts include an actual dog bite or direct physical contact, "it could easily have drafted the statute to do so. The legislature did not do so here, and we will not interpret the statute to expand the scope of the terms used." *Appeal of Astro Spectacular*, 138 N.H. at 300, 639 A.2d at 250 (citations omitted).

■ This construction does not, as the defendants contend, make a dog owner "an insurer" for every person who "walks or drives a bike past" their property. We merely follow the legislature's lead in holding dog owners responsible for keeping their dogs under control and, if they do not, holding them strictly liable for any damage which an injured person proves was occasioned by their dog's vicious or mischievous conduct.

## II. *"Comparative Fault" Under RSA 507:7-d*

The defendants next argue that the trial court erred in refusing to grant their request for jury instructions and a special verdict form applying RSA 507:7-d comparative fault principles to this strict liability case. We disagree.

■ We review jury instructions as a whole to determine whether the trial court has "fully and correctly instruct[ed] the jury as to the law applicable to the case." *Peterson v. Gray*, 137 N.H. 374, 377, 628 A.2d 244, 246 (1993) (quotation omitted). If an error was made, it is reversible if "the jury could have been misled [by the erroneous jury charge] into basing its verdict on a misperception of the law." *Id.* (quotation and emphasis omitted). A court may refuse to give a requested instruction on either party's theory of the case if there is insufficient evidence in the record for that party to have met his or her burden of proof as to that theory, *see Cowan v. Tyrolean Ski Area, Inc.*, 127 N.H. 397, 400–01, 506 A.2d 690, 693 (1985), *i.e.*, insufficient evidence from which a rational juror could find for the moving party as to that theory, *Hancock v. R.A. Earnhardt Textile Mach. Div.*, 139 N.H. 356, 357–58, 653 A.2d 558, 559 (1995). "[T]he test of adequacy of any charge is whether, taken as a whole, it fairly presented the case to the jury in such a manner that no injustice was done to the legal rights of the litigants." *Peterson*, 137 N.H. at 377, 628 A.2d at 246 (quotation omitted).

■ To determine whether a jury charge on comparative fault was required, we must construe the statute, looking first to the plain and ordinary meanings of the words used in RSA 507:7-d. *See Appeal of Astro Spectacular*, 138 N.H. at 300, 639 A.2d at 250. RSA 507:7-d provides:

Contributory fault shall not bar recovery in an action by any plaintiff or plaintiff's legal representative, to recover damages in tort for death, personal injury or property damage, if such fault was not greater than the fault of the defendant, . . . but the damages awarded shall be diminished in proportion to the amount of fault attributed to the plaintiff by general verdict.

This statute applies to all tort actions, not merely actions founded in negligence. *Compare* RSA 507:7-d (applicable to all actions "to recover damages in tort") *with* RSA 507:7-a (1983) (repealed 1986) (applicable only to negligence actions). A strict liability case is an action "in tort," albeit a tort where liability is not premised on the defendant's "fault." *See* W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 2, 534 (5th ed. 1984) (a tort is a civil wrong, other than a breach of contract, for which the court will provide a remedy in the form of damages); BLACK'S LAW DICTIONARY 1422, 1489 (6th ed. 1990).

Applying the comparative fault statute to actions under RSA 466:19 is consistent with our prior cases. We had previously held that a plaintiff was completely barred from recovering under RSA 466:19 if he or she was contributorily negligent to any degree. *Wike v. Allison*, 105 N.H. 393, 395, 200 A.2d 860, 862 (1964); *Quimby v. Woodbury*, 63 N.H. 370, 374 (1885) (applying prior law). Moreover, at the time RSA 507:7-d was enacted, our case law applied comparative causation concepts to strict products liability cases, even though the predecessor statute, RSA 507:7-a, by its terms, applied only to negligence actions. *Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 810–13, 395 A.2d 843, 848–50 (1978). Nothing in *Thibault* indicates that we would have been unwilling to apply a comparative causation statute to products liability cases or to other strict liability cases if such a statute were applicable. *Id.*; *see Hewes v. Roby*, 135 N.H. 476, 478, 606 A.2d 810, 811 (1992). Indeed, it would defy common sense for the plaintiff's misconduct to be totally irrelevant to a claim under RSA 466:19 – for example, if a plaintiff approached an otherwise passive dog and hit it on the nose with a stick, thereby provoking the dog to bite him, his own misconduct should certainly be considered by the jury in assessing any damages to be paid by the dog's owner. *See, e.g.*, *Quimby*, 63 N.H. at 374;

*Dorman v. Carlson*, 137 A. 749, 749–50 (Conn. 1927) (similar dog owners liability statute).

██ ██ Accordingly, we hold that RSA 507:7-d applies to cases brought under RSA 466:19. We interpret "comparative fault" slightly differently, however, in the context of a strict liability case than in a negligence case. Prior to the enactment of RSA 507:7-d, we noted that, by definition, strict liability and "comparative negligence" are incompatible concepts, *see Thibault*, 118 N.H. at 811–12, 395 A.2d at 848–50, because strict liability imposes liability on defendants without regard to their fault, *see* KEETON, *supra* at 534. We avoid construing statutes in a manner that would produce such "seemingly illogical results." *State v. Farrow*, 140 N.H. 473, 476, 667 A.2d 1029, 1032 (1995). Instead, courts should look to "comparative causation" in evaluating damages in strict liability cases. *Thibault*, 118 N.H. at 813, 395 A.2d at 850 (plaintiff's damage award reduced by percentage reflecting extent to which plaintiff's own unreasonable actions contributed to *causing* the injuries).

██ In the instant case, the trial court erred in concluding that RSA 507:7-d does not apply to cases brought under the dog owners liability statute, RSA 466:19. Despite this error, we hold that the court was correct in refusing the defendants' request for jury instructions and special verdict forms regarding comparative fault or causation. *Cf. In re Trailer and Plumbing Supplies*, 133 N.H. 432, 438, 578 A.2d 343, 346 (1990) (upholding trial court reaching correct result, but on mistaken grounds, where there were valid alternative grounds to support decision).

██ The defendants did not offer evidence of the kind of plaintiff's misconduct which the jury could appropriately consider in diminishing its award of damages to the plaintiff. In the products liability context, the "'[p]laintiff's misconduct' [might] include, where applicable, product misuse or abnormal use, as well as embodying the 'negligence' or 'assumption of the risk' concepts in our prior cases of *voluntarily and unreasonably proceeding to encounter a known danger*." *Thibault*, 118 N.H. at 812, 395 A.2d at 849 (emphasis added). In the instant case, if the record contained evidence that the plaintiff voluntarily or unreasonably exposed himself to a foreseeable risk of injury of the type he suffered, then a comparative causation instruction might have been appropriate. *See id.* at 812–13, 395 A.2d at 849. The record below, however, is devoid of evidence that the plaintiff knowingly put himself into a dangerous situation or provoked the dog, thereby creating or exacerbating his risk of harm. On the contrary, the defendants

merely allege that the plaintiff did not act properly in *reacting* to the attack by the defendants' dog, *i.e.*, that he did not respond appropriately to the surprise situation in which he found himself and for which he cannot be held responsible. There is no evidence tending to show that the plaintiff had time to think about what alternative evasive action he might take, such as might rise to the level of "plaintiff's misconduct." *See id.; State v. Hast*, 133 N.H. 747, 749, 584 A.2d 175, 176 (1990). In light of the evidence before the court and after reviewing the trial court's charge as a whole, we cannot conclude that the jury could have been misled by the court's instructions or that an injustice was done to the legal rights of the defendants. *See Peterson*, 137 N.H. at 377, 628 A.2d at 246.

*III. Evidentiary Issues*

The defendants next argue that the trial judge improperly excluded, as irrelevant, evidence of the plaintiff's prior work-related injuries and details of a previous bicycle accident. *See* N.H. R. EV. 401. The determination of whether evidence is relevant is within the sound discretion of the trial court, and we will not reverse its determination absent an abuse of that discretion. *Johnston v. Lynch*, 133 N.H. 79, 89, 574 A.2d 934, 940 (1990). The defendants must demonstrate that the discretionary ruling is clearly untenable or unreasonable to the prejudice of their case. *Simpkins v. Snow*, 139 N.H. 735, 741, 661 A.2d 772, 777 (1995).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. EV. 401. The defendants argue that evidence of the plaintiff's prior injuries should have been admitted because it would have been relevant to the plaintiff's credibility as a witness, to the extent of damages, and to alternative theories about how the accident may have taken place. Considering the entire record in this case, including the evidence and offers of proof, we find none of these three asserted bases for relevancy is sufficiently supported to warrant a reversal of the trial court's discretionary ruling.

The defendants have not asserted any context in which evidence of prior injuries would be relevant to the plaintiff's credibility in testifying about what happened on January 12, 1993. Merely showing that the plaintiff had previously been injured does not, without more, make it more or less probable that he was telling the truth when he testified that the defendants' dog attacked him on that date, causing him to fall off his bicycle. *See id.* Nor does the

proffered evidence of prior injuries have any relevance to the second asserted ground for relevancy: the damages resulting from the 1993 accident. The plaintiff's prior injuries involved different areas of his body; the defendants have advanced no argument that any claimed injury from the past had any impact on the damages currently being asserted by the plaintiff. Finally, after a review of the record in this case, we fail to see how the prior injuries would make it more or less probable that the 1993 accident occurred in some alternative way. The burden is on the party seeking admission of the evidence to make a contemporaneous offer of proof and to create a sufficient record for our review on appeal, i.e., a record that sets forth the specific basis for admissibility of the proffered evidence; mere conclusory assertions or speculation, as the defendant offered here, are not sufficient to meet that burden. See McMullin v. Downing, 135 N.H. 675, 679, 609 A.2d 1226, 1229 (1992); State v. Saulnier, 132 N.H. 412, 413–15, 566 A.2d 1135, 1135–36 (1989).

The defendants finally argue that the trial court erred in excluding from evidence the plaintiff's income tax returns from 1991 to 1993. The defendants sought to introduce the tax returns as relevant to the plaintiff's lost wage claim. Such relevance does not appear on the face of the tax returns, however, because the returns do not allocate the source of the plaintiff's income. Nor did the defendants clarify this matter through an offer of proof or other showing on the record. See Saulnier, 132 N.H. at 413, 566 A.2d at 1135–36; N.H. R. Ev. 103(b)(2). On the contrary, our review of the record available to us on appeal tends to show that the reason the plaintiff's 1993 income appeared similar to the income shown on his 1991 and 1992 tax returns was a result of his receipt of disability benefits and his use of unused sick days and vacation days after the accident, none of which was admissible for the jury's consideration. See Cyr v. J.I. Case Co., 139 N.H. 193, 195, 652 A.2d 685, 688 (1994). Nothing else appears in this limited record to connect the proffered tax returns with a valid measure of damages, such as earnings by the plaintiff in an effort to mitigate his damages. "We cannot base a finding that the trial court abused its discretion upon mere speculation." State v. Bergmann, 135 N.H. 97, 100, 599 A.2d 502, 504 (1991) (quotation omitted). Finally, to the extent that the tax returns proffered by the defendants were probative at all, they would have been confusing and misleading to the jury because they would have led the jury to focus on the plaintiff's total income, including inadmissible income from collateral sources. See Cyr, 139 N.H. at 198, 652 A.2d at 689.

Accordingly, the trial court did not abuse its discretion in excluding them from evidence. *See Johnston*, 133 N.H. at 89, 574 A.2d at 940.

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.