NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2012-886

THE STATE OF NEW HAMPSHIRE

v.

ASHLEY HAYWARD

Argued: January 16, 2014
Opinion Issued: August 15, 2014

Joseph A. Foster, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. Following a jury trial in Superior Court (Vaughan, J.), the defendant, Ashley Hayward, was convicted of one count of accomplice to robbery. See RSA 626:8 (2007); RSA 636:1 (2007). At trial, she asserted a duress defense, claiming that she was coerced into participating in the robbery by threats made against her by Tyler Dodge, her boyfriend and a co-participant in the robbery. On appeal, she argues that the trial court erred in precluding her from introducing evidence of Dodge's past threatening and violent behavior. We reverse and remand.

I.  Background

The jury could have found the following facts.  On the night of January 9, 2012, the defendant and Dodge were visiting Dodge's friend, Marvin Jones, at Jones's residence in Arlington, Massachusetts.  At some point, Jones, Dodge, and the defendant drove north in the defendant's vehicle to the Baymont Inn in Lebanon, where the defendant had briefly been employed for a period ending about one month earlier.  At approximately 12:30 a.m. on January 10, Dodge and Jones entered the lobby of the Baymont Inn with their faces obscured and robbed the front desk clerk of $220.  They then returned to the defendant's car, where she was waiting, and all three drove away.

On January 18, 2012, officers from the Lebanon Police Department interviewed the defendant about the robbery.  The defendant appeared upset, but denied knowledge of the robbery.  When confronted with evidence of her involvement during a second interview later that day, the defendant initially denied participating in the robbery, but ultimately confessed to driving Dodge and Jones to and from the Baymont Inn.  She explained that Dodge had threatened to "beat the shit out of her" if she did not drive them.  During both interviews, the defendant cried and appeared scared and upset.  She explained that Dodge was trying to change his life, but "was getting out of control."  She told the officers that Dodge had difficulty managing his anger and that he would get angry at her very quickly.  The defendant also explained that Dodge was very controlling, that "it was his way or the . . . highway," and that they had gotten into a fight over Dodge's intent to commit the robbery.  During this interview, the defendant told the officers that if she had not driven Dodge to the robbery, he would have taken her car and "that would have been more of a fight," and that she was "afraid [she] was going to get hurt and so [she] did what he asked."  She also stated that she did not call 911 because she did not want Dodge to go to jail and because she did not want to be implicated in the robbery.

The following day, the defendant was interviewed a third time.  In that interview, she explained to officers that Dodge wanted to commit the robbery in part because they had no money and were hungry, and he wanted to buy the defendant food.  She also said that she thought that she, Dodge, and Jones were going to Newport, New Hampshire to visit family, but that after reaching a toll booth in New Hampshire, Dodge stated that he wanted to rob the Baymont Inn.

Additionally, at some time during her interviews, the defendant told the officers that, in the past, Dodge threatened her when she did not do as he asked — including putting a knife to her throat.

2

Before trial, the State filed a motion in limine requesting, in pertinent part, that the trial court preclude the defendant from arguing the defense of duress during trial. The State's motion was based solely upon the evidence it presumed the defendant would seek to admit regarding Dodge's threats on the night of the robbery. The State argued that those threats were inadmissible because the defendant had "multiple alternatives at her disposal to avoid committing the criminal act." The State argued that the defendant could not meet her burden of showing duress by a preponderance of the evidence, and that the court, therefore, should preclude all evidence of duress. The defendant objected to the motion, referencing not only the threats that Dodge made against her on the night of the robbery, but also referencing his prior threats and violence against her, including putting a knife to her throat. She asserted that such evidence entitled her to an instruction on the defense of duress.

The court addressed the State's motion on the day the trial began. After hearing arguments from the parties, the court ruled that the defendant could introduce evidence regarding Dodge's threats against her on the night of the robbery, including his threat to beat her "if she didn't drive him to the Baymont for the robbery." However, the court excluded evidence of Dodge's prior threats and acts of violence against the defendant, including the incident in which he held a knife to her throat. The court explained the basis for its decision as follows:

> [A]s far as prior incidents, I think, my view of the case law is pretty clear. You can't reach back and pick up things in the past. I mean, as a practical matter, this woman, if she was at some point previously threatened, could have left her companion and gone someplace else. So she stuck with him.
>
> And the case law, the two cases we have in New Hampshire focus on the event itself. And that's the testimony, if it comes in, that I would allow to come in, not the prior incidents.

The court deferred ruling on whether it would permit the jury to consider the duress defense until the close of the evidence, at which time it ruled that the evidence was sufficient to warrant an instruction on the defense. It, therefore, gave the following jury instruction:

> The defendant has raised a common law defense of duress. Duress is defined as acting against [one's] will under threat of serious bodily injury or death. The Defendant has the burden of proving, by a preponderance of the evidence, that the Defendant was purposely acting to facilitate the commission of the crime of

3

robbery by threat of physical force under threat of imminent death or serious bodily injury.

Evidence that the Defendant may have felt some pressure or influence to act, to aid in the commission of the offense or emotionally was unhappy facilitating the commission of the crime, is not sufficient to prove duress. The defense of duress applies only when the Defendant is under an unlawful threat of imminent death or serious bodily injury which threat caused the Defendant to engage in conduct with which she is charged.

The jury found the defendant guilty of accomplice to robbery. This appeal followed.

II. Discussion

On appeal, the defendant argues that the trial court erred by excluding, as irrelevant, evidence of Dodge's threatening and violent conduct against her before the night of the robbery. The defendant contends that evidence of Dodge's prior threats and violence, including the incident during which he put a knife to her throat, was highly relevant to her duress defense. That evidence, she argues, tends to make it more likely that she reasonably feared imminent death or serious bodily injury when Dodge threatened, on the night of the robbery, to beat her if she did not assist him. That evidence was probative, she concludes, "to explain why she followed [Dodge's] command to drive him to the site of the robbery." The State responds that the trial court properly excluded the evidence as irrelevant because the prior threats were not made close in time to the robbery. As noted above, the trial court ruled that only threats made on the night of the robbery were admissible; all threats and violent acts occurring prior to that time were ruled inadmissible.

Before addressing the parties' arguments, we observe that although we have not yet recognized the common law duress defense, the State does not dispute that duress was a cognizable defense in this case. Nor does the State contend on appeal that the evidence was insufficient to justify the duress instruction. Furthermore, neither party challenges the trial court's duress instruction. Accordingly, we have no occasion to decide those issues.

We review a trial court's ruling admitting or excluding evidence for an unsustainable exercise of discretion. State v. White, 155 N.H. 119, 123 (2007). "To show an unsustainable exercise of discretion, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case." State v. Furgal, 164 N.H. 430, 438 (2012) (quotation omitted).

4

Evidence is relevant it if has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. Evidence that an individual has been the victim of past violent acts may be relevant to explain that individual's present behavior. See State v. Beltran, 153 N.H. 643, 648 (2006) (evidence of defendant's abuse of collaborator was admissible to explain collaborator's submission to defendant's demands surrounding the crime and her delay in reporting).

Here, the trial court's relevancy determination was erroneous for two reasons. First, the trial court apparently concluded that the defendant's decision to remain with Dodge obviated any relevance of the prior threats and violence. This was error. The defendant's decision to remain with Dodge could have affected the weight the jury gave to the evidence, but should not have affected its admissibility. Second, the trial court also apparently concluded that the prior threats and violence were too remote in time to be relevant to a duress defense. This, too, was error. Dodge's prior threats and violence were relevant to the duress defense because they tended to make it more probable that the defendant acted under a reasonable fear of imminent death or serious bodily injury than would have been the case without such evidence. Moreover, the trial court's ruling was "clearly untenable or unreasonable to the prejudice of [the defendant's] case." Furgal, 164 N.H. at 438. By excluding evidence that Dodge had previously threatened and been violent toward the defendant, including once putting a knife to her throat, the trial court deprived the jury of evidence necessary to its assessment of her duress defense. Thus, we conclude that the trial court erred when it found that evidence of Dodge's prior threats and violence was irrelevant to the defendant's duress defense.

The State urges us to affirm the trial court's decision, nonetheless, because alternative grounds support it. See State v. Dion, 164 N.H. 544, 552 (2013) ("Where the trial court reaches the correct result on mistaken grounds, we will affirm if valid alternative grounds support the decision." (quotation and brackets omitted)). For the first time on appeal, the State asserts that, to the extent the defendant sought to elicit evidence of Dodge's prior threats and violence by cross-examining the police officers who interviewed her, such evidence constitutes inadmissible double hearsay. The first asserted level of hearsay is comprised of Dodge's out-of-court statements and actions; the second asserted level of hearsay is comprised of the defendant's out-of-court statements to the police relaying Dodge's statements and actions. In this context, Dodge's non-verbal conduct, such as the act of putting a knife to the defendant's throat, could be considered to be hearsay because it was "intended by [him] as an assertion." N.H. R. Ev. 801(a)(2). The defendant counters that Dodge's out-of-court statements and actions are not hearsay because they were not offered for their truth. The defendant further responds that her statements

5

to the police about what Dodge said and did are admissible under the doctrine of verbal completeness.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.H. R. Ev. 801(c). We begin by addressing the first asserted level of hearsay – Dodge's out-of-court statements and conduct. We agree with the defendant that evidence of what Dodge said and did does not constitute hearsay because that evidence was not offered for its truth. "If a statement is not offered to prove its truth, but is offered for some other reason, such as to prove simply that the statement was made, it is not hearsay." State v. Sulloway, 166 N.H. ___, ___, 90 A.3d 605, 613 (2014) (quotation omitted). Here, the defendant did not seek to offer Dodge's threats or violence to prove the truth of any assertions he made; rather, such evidence was offered merely to provide a foundation for the reasonableness of the defendant's fear at the time of the robbery. In short, the point of such evidence was not whether any of Dodge's assertions were "true," but merely that the threats or violence were perceived by the defendant.

We next address the second asserted level of hearsay – the defendant's statements to the police describing Dodge's out-of-court statements and conduct. Defense counsel stated at oral argument that the defendant's statements describing Dodge's threats and violence were offered for their truth, and, therefore, fall squarely within the definition of hearsay. In light of that concession, we need not decide whether the defendant's descriptions of Dodge's prior threats and violence, in fact, constituted hearsay.

The defendant argues that her statements nonetheless were admissible under the doctrine of verbal completeness in light of other statements she made to the police as elicited by the State through the officers who interviewed her. The doctrine of verbal completeness is a common law rule recognized by this court, whereby "a party has the right to introduce the remainder of a writing, statement, correspondence, former testimony or conversation that his or her opponent introduced so far as it relates to the same subject matter and hence tends to explain or shed light on the meaning of the part already received." State v. Lopez, 156 N.H. 416, 421 (2007) (quotation omitted); see also N.H. R. Ev. 106. The doctrine "exists to prevent one party from gaining an advantage by misleading the jury." Lopez, 156 N.H. at 421 (quotation omitted). "Thus, there are two requirements to trigger the doctrine respecting conversations: first, the statements must be part of the same conversation; and second, admission of only a portion would mislead the jury." Id. (quotation omitted). The rule does not render evidence automatically admissible, though "otherwise inadmissible evidence may be admitted to prevent a party from gaining a misleading advantage." State v. Warren, 143 N.H. 633, 636 (1999).

6

Here, the first requirement of the doctrine is met, as both the defendant's inculpatory statements regarding her role in the robbery and her exculpatory statements regarding Dodge's past threats and violence were made during her interviews with the police. The defendant argues that the second requirement of the doctrine also is met because "[p]ermitting the State to inform the jury that [she] admitted to driving Dodge and Jones to the location of the robbery, while excluding her explanation of why she did so, clearly would have allowed the State to gain an advantage by misleading the jury."

Our review of this issue is informed by the context in which it arises. Ordinarily, a decision by a trial court regarding the applicability of the verbal completeness doctrine is made after the parties have had the opportunity to address the issue, and the trial court has had the opportunity to exercise its discretion in light of all of the relevant circumstances. Such a decision is reviewed on appeal for an unsustainable exercise of discretion. See Lopez, 156 N.H. at 420-21. However, in this case, the trial court never addressed the issue because it ruled before trial that Dodge's prior threats and violence were irrelevant and, therefore, inadmissible.

Neither the trial court nor the parties discussed whether either Dodge's prior threats and violence or the defendant's out-of-court description of them constituted inadmissible hearsay. Nor was there any discussion about whether the defendant's out-of-court description was admissible under the verbal completeness doctrine. Although in its brief, the State asserts that "the court expressed the opinion that the evidence [of prior threats and abuse] was 'relevant, but it [was] also hearsay,'" the State has mischaracterized the record. When the court made that statement, it was discussing the admissibility of the defendant's out-of-court description of Dodge's general demeanor. Similarly, although the State contends that the trial court "explored" the hearsay objection later in the trial, the hearsay objection to which the State refers concerned Dodge's statements on the night of the robbery. The objection was not to his prior threats and violence, nor was it to the defendant's statements to the police describing them.

Moreover, after the trial court ruled before trial that all evidence of Dodge's prior threats and violence was inadmissible as irrelevant, there was no cause for the defendant to argue that the evidence was admissible under the verbal completeness doctrine. That doctrine requires that the evidence sought to be admitted be relevant to explain or shed light on previously admitted evidence. Id. at 421. Given that the court had already determined that the evidence was irrelevant, it would have been futile for the defendant to rely upon a doctrine that has relevancy as one of its requisites. When, as in this case, a discretionary decision is at issue and the trial court has not exercised that discretion, we may sustain the trial court's ruling on a ground upon which it did not rely only if "there is only one way the trial court could have ruled as a

7

matter of law." Thomas v. United States, 59 A.3d 1252, 1266 (D.C. 2013); see Wright v. United States, 508 A.2d 915, 919-20 (D.C. 1986) (appellate court may affirm trial court that reached right result for wrong reason on a discretionary ruling only in rare case where trial court had but one option it could choose without abusing its discretion, so that appellate court can affirm as a matter of law).

Here, we cannot say, as a matter of law, that had the trial court addressed the issue and exercised its discretion, it would have found the evidence inadmissible under the verbal completeness doctrine. As the defendant argues in her reply brief, the court reasonably could have decided that permitting the State to inform the jury that the defendant admitted to the police to driving Dodge and Jones to the location of the robbery, while excluding relevant evidence for why she did so, allowed the State to gain a misleading advantage.

Moreover, the record in this case indicates that had the trial court ruled that the evidence of prior threats and violent acts was relevant to the duress defense, the court might have admitted it under the completeness doctrine. During argument on the State's motion in limine, after the court had ruled that the threats on the night of the robbery were relevant, the prosecutor stated:

> Briefly, as we reiterated in chambers, the State understands and concedes that the statement attributed to Tyler Dodge by the Defendant, which is essentially the basis for her claim, is that he [would] beat [her] . . . if she didn't drive him to the Baymont for the robbery. That statement, the State assumes, will come in because it was made during an interview with the police. And I think under the doctrine of completeness, both the inculpatory and any exculpatory statements would come in.

(Emphasis added.) The State's argument on appeal that the defendant's statements to the police constituted hearsay (when testified to by the police) applies not only to her statements regarding prior threats, but also to her statements regarding threats made on the night of the robbery. Yet, as the prosecutor recognized, the hearsay statements to the police regarding threats made on the night of the robbery were admissible under the doctrine of completeness, and the prosecutor expressed his opinion that under the doctrine of completeness, any exculpatory statements by the defendant to the police would be admitted. Had the trial court understood that the defendant's statements to the police regarding the prior threats and violent acts were also relevant, exculpatory statements, it may well have admitted them under the same theory.

In summary, we are unable to conclude on the record before us that there was only one way that the trial court could have ruled had it been asked to decide whether the evidence of Dodge's prior threats and violence was admissible under the completeness doctrine. Under those circumstances, we decline to affirm the conviction on the ground that the trial court reached the right result for the wrong reason.

Finally, we briefly address the State's contention that the trial court's error was harmless. To establish that an error was harmless, the State must prove beyond a reasonable doubt that the error did not affect the verdict. State v. Souksamrane, 164 N.H. 425, 429 (2012). An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. Id. Here, the jury was instructed that the defendant bore the burden of proving, by a preponderance of the evidence, that she "was purposely acting to facilitate the commission of the crime of robbery by threat of physical force under threat of imminent death or serious bodily injury." We agree with the defendant that the excluded evidence, particularly evidence that Dodge put a knife to her throat, was highly relevant to whether the defendant reasonably feared imminent death or serious bodily injury when Dodge threatened to beat her on the night of the robbery. Because of its nature, such evidence cannot be characterized as merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. Had such evidence been admitted, it is possible that the jury would have credited the defendant's duress defense. Because we are not persuaded beyond a reasonable doubt that the error did not affect the verdict, we reverse and remand.

Reversed and remanded.

HICKS, CONBOY, and BASSETT, JJ., concurred; LYNN, J., dissented.

LYNN, J., dissenting. Although I agree with the majority that the trial court erred in ruling that evidence regarding threats or violent acts directed against the defendant by Tyler Dodge on occasions prior to the day of the robbery were irrelevant to her duress defense, I do not agree that this error requires the reversal of the defendant's conviction.

I

Our traditional standard of review applicable to trial court evidentiary rulings is that the party claiming error must demonstrate that the trial court's "ruling was clearly untenable or unreasonable to the prejudice of his case." State v. Deschenes, 156 N.H. 71, 76 (2007) (emphasis added). In this case,

9

however, the majority deviates from this long-held standard and effectively substitutes a standard that grants the defendant relief upon showing merely that the trial court's erroneous ruling might have prejudiced her case. In my view, there is no sound justification for employing such a relaxed standard.

It is important to note at the outset that, although it was the State that requested in its motion in limine a pretrial ruling that the duress defense was unavailable to the defendant, when the court denied that request it became the defendant's burden to demonstrate the admissibility of the evidence it sought to introduce to support the defense. See, e.g., State v. Walters, 142 N.H. 239, 242 (1997) ("The party offering evidence generally bears the burden of demonstrating its admissibility."); N.H. R. Ev. 103(b)(2) (providing that error may not be predicated upon a ruling excluding evidence unless a substantial right of the party challenging the ruling is affected and the substance of the evidence was contemporaneously made known to the court by offer of proof).

As we recently explained in State v. Noucas, 165 N.H. 146, 158 (2013), "[i]n order to predicate error on a trial court's ruling excluding evidence, the proponent of the evidence bears the burden of making a contemporaneous offer of proof sufficient to apprise the court of the specific nature of the excluded evidence." Id.; see also So. Willow Properties v. Burlington Coat Factory of N.H., 159 N.H. 494, 503 (2009); State v. Saulnier, 132 N.H. 412, 413-14 (1989). "The object of Rule 103(b) is to advise the trial judge of a claim of error so that it can be addressed before any damage is beyond correction in the trial court." Noucas, 165 N.H. at 158 (quotation and brackets omitted). To satisfy this requirement, the proponent must do more than merely describe the content of proposed evidence; instead, the offer of proof must establish both the relevancy and competency of the evidence at issue. See id. at 159 (citing United States v. Adams, 271 F.3d 1236, 1241 (10th Cir. 2001), for premise that "[m]erely telling the court the content of proposed testimony is not an offer of proof. In order to qualify as an adequate offer of proof, the proponent must, first, describe the evidence and what it tends to show, and, second, identify the grounds for admitting the evidence." (quotation, brackets, and ellipses omitted)). The party seeking admission of the evidence also has a burden "to create a sufficient record for our review on appeal, i.e., a record that sets forth the specific basis for admissibility of the proffered evidence." Appeal of Montplaisir, 147 N.H. 297, 303 (2001) (quotation omitted); see Bohan v. Ritzo, 141 N.H. 210, 218 (1996). "Mere conclusory assertions or speculation are not sufficient to meet that burden." Montplaisir, 147 N.H. at 303 (quotation and ellipses omitted); see Bohan, 141 N.H. at 218.

As applied to the disputed evidence here at issue, i.e., the evidence regarding Dodge's alleged threats and violence toward the defendant on

10

occasions prior to the day of the robbery,[1] including the incident when he placed a knife to the defendant's throat, the above requirements mandated that the defendant make an offer of proof showing: (1) that such conduct by Dodge was relevant; and (2) that the defendant had competent evidence to prove that such conduct occurred. I am in full agreement with the majority's analysis as to why the trial court erred in its ruling on the first point — relevancy. What I disagree with is the majority's conclusion that, because the trial court made an erroneous ruling on relevancy, this somehow relieved the defendant of her responsibility to satisfy the second requirement of a proper offer of proof. The only explanation offered by the majority for adopting this approach is to say that, in light of the court's ruling on relevancy, "it would have been futile" for the defendant to do so given that relevancy is one of the requisites of admissibility under the doctrine of completeness. The important point, however, is that relevancy is not the only requisite to admissibility under the doctrine of completeness — the proponent of the evidence also must show that, absent its admission, a misleading impression would be created. Ante at 6. To me, the very fact that the majority finds it necessary to reverse the defendant's conviction based on the trial court's failure to rule on this second prong of the completeness doctrine poignantly demonstrates the fallacy of its position.

If what the majority means by "futile" is that, given the trial court's ruling on relevancy, the defendant had little chance of changing the outcome by pressing the second prong of the offer of proof, I do not disagree. But why should that fact excuse the defendant from making an appropriate record so that we have before us all the information we need to determine whether she was actually prejudiced by the trial court's ruling? It is not at all uncommon for trial counsel, faced with an adverse ruling from the court, to request the opportunity to make a full offer of proof for the purpose of preserving an issue for appeal. Nor is there any indication in the record that the trial court prevented — or would have prevented — the defendant from making a full offer of proof.

The majority correctly observes that the determination of whether the prior threats evidence was admissible, notwithstanding the hearsay rule, under the verbal completeness doctrine was a decision committed to the discretion of the trial court.[2] Had the defendant articulated her position and asked the trial

---

[1] For ease of reference, I hereinafter refer to this evidence as the "prior threats evidence."

[2] By emphasizing a single word in a statement made by the prosecutor, the majority seems to suggest that he all but conceded that "any exculpatory statements [made by the defendant during the police interviews] would come in." Ante at 8 (emphasis added). But on the very next page of the transcript, the prosecutor stated that "the State takes exception" to the court's ruling that even the statement made by the defendant that Dodge threatened to "beat the shit out of her" on the night of the robbery met the standard of admissibility. Since this statement was exculpatory, the best that can be said is that the record is unclear as to what the State's position would have been about whether the prior threats evidence would have been admissible under the doctrine of completeness. I am in complete agreement with the majority that neither the trial court nor the

11

court to make a ruling on this issue, there is no reason to believe the court would have refused to do so.[3] And if the defendant had followed this course, the trial court could have determined, within its discretion and as an alternative basis for excluding such evidence, that even if its view as to the relevancy of the evidence was erroneous, the defendant's statements about such conduct were not admissible under the doctrine of verbal completeness because they were not necessary to correct a misleading impression resulting from the portions of her statements that the court was permitting to be admitted. The majority acknowledges that such an alternative ruling by the trial court would not have been erroneous as a matter of law. Ante at 7-8. Indeed, given the other extensive evidence of duress which the court permitted the defendant to elicit from the officers who interviewed her, including her statements about Dodge's threats on the day of the robbery and about her fear of both Dodge and Jones, such a ruling by the trial court would have been entirely consistent with our case law. See State v. Mitchell, 166 N.H. ___, ___ (decided May 16, 2014) (holding that exclusion of evidence of defendant's offers to take polygraph examination did not create misleading impression where defendant was allowed to elicit other evidence that he adamantly denied guilt and observing that "the doctrine of completeness does not require the admission of otherwise inadmissible evidence simply to bolster a defendant's claim of innocence"); State v. Botelho, 165 N.H. ___, ___, 83 A.3d 814, 824 (2013) (exclusion of portions of police interview in which defendant expressed concern for her children did not prejudice her "because she expressed concern for her children at several other points throughout the admitted portion of the interview"); State v. Lopez, 156 N.H. 416, 423 (2007) (where defendant was permitted to introduce evidence that he cried when speaking with his family prior to and during his arrest, "trial court did not err by not permitting him to introduce more of such evidence"); compare State v. Keith, 136 N.H. 572, 575 (1992) (doctrine of completeness required admission of remainder of non-testifying witness's statement to police where portion admitted by defendant created misleading impression that witness saw someone "run into the woods, never to return," and that witness and police officer saw different individuals run into woods). Unlike the majority, I would not permit the defendant to benefit on appeal from her own failure to make a complete offer of proof and seek a ruling from the trial court on all necessary prerequisites to the admission of the evidence she now claims was wrongly excluded.[4]

parties discussed whether the prior threats evidence constituted hearsay or was admissible under the doctrine of completeness. But that is the very point. As the proponent of that evidence, it was the defendant's burden to make a complete offer of proof and to seek a ruling from the trial court on these issues. The consequences of the defendant's failure to do so should rest with her, not with the State.

[3] Of course, if the trial court had declined to make such a ruling, in the face of a full offer of proof by the defendant, then I would readily concede that nothing more could reasonably be expected from the defendant in order to preserve the issue for our review.

[4] The majority cites dicta from two cases decided by the Court of Appeals for the District of Columbia for the proposition that where "a discretionary decision is at issue and the trial court

Moreover, even assuming that there is some valid reason for excusing the defendant's failure to make a proper offer of proof as to the admissibility of the prior threats evidence, I fail to see any justification for the majority's decision to grant the defendant a new trial as the appropriate form of relief. If, as the majority asserts, the only error that potentially prejudiced the defendant was the trial court's failure to exercise its discretion as to whether the foregoing evidence should have been admitted under the doctrine of completeness, the appropriate remedy, at least in the first instance, should be limited to a remand to the trial court to permit it to exercise its discretion. If, on remand, the trial court determines that the disputed evidence should have been admitted, only <u>then</u> would a new trial be in order. On the other hand, if the court determines that the portions of the defendant's statements to the police admitted at trial did not create a misleading impression necessitating admission of the disputed evidence, this court would remain available to the defendant to obtain review of that decision. Indeed, in <u>Thomas</u>, one of the cases upon which the majority relies, this is exactly the remedy the court would have imposed were it not for the fact that the court also found alternative grounds upon which the defendant was entitled to a new trial. <u>See Thomas v. United States</u>, 59 A.3d 1252, 1267 (D.C. 2013). Since there is no alternative basis for reversal of the conviction in this case, the majority's rush to order a new trial is inexplicable.

Finally, even if this evidentiary ruling is adequately preserved for our review, unlike the majority, I would find that any error was harmless beyond a reasonable doubt.[5] Because the State does not argue to the contrary, I, like the majority, assume that duress was a legally available defense in this case.

---

has not exercised its discretion, we may sustain the trial court's ruling on a ground upon which it did not rely only if there is only one way the trial court could have ruled as a matter of law." <u>Ante</u> at 7-8 (citing <u>Thomas v. United States</u>, 59 A.3d 1252, 1266 (D.C. 2013), and <u>Wright v. United States</u>, 508 A.2d 915, 919-20 (D.C. 1986)). Regardless of whether this dicta is sound as an abstract principle of law, the important point is that neither case involved a situation, as exists here, wherein the proponent of evidence failed to make a properly detailed proffer as to the basis upon which the evidence was admissible. Thus, <u>Thomas</u> and <u>Wright</u> are distinguishable and do not support the result reached by the majority in this case.

[5] It must be noted that there is some analytical tension between the majority's reliance on the <u>Wright</u>-<u>Thomas</u> line of cases, on the one hand, and its conclusion that the error at issue here is not harmless, on the other. If, as the majority asserts, the trial court error requiring reversal is the court's failure to exercise its discretion as to the doctrine of completeness, then presumably, under its reasoning, there would have been <u>no error at all</u> if the court had exercised its discretion to exclude the evidence. That being the case, it is hard to understand how the court's failure to exercise its discretion, which has the exact same result, <u>i.e.</u>, the disputed evidence is excluded from the trial, can be anything other than harmless error. Even assuming that the majority's position on these issues can be reconciled, however, the <u>Wright</u> opinion makes it clear that a failure to exercise discretion error can constitute harmless error. <u>See Wright</u>, 508 A.2d at 921 (after determining that trial court's ruling precluding defendant's counsel from making an opening statement could not be justified as a discretionary decision based upon the statement's putative "argumentative" nature because the court had never exercised its discretion on this issue, the court nonetheless found the error harmless and affirmed the defendant's conviction).

13

That said, however, the record makes it abundantly clear that, from a factual perspective, this defense was supported by little more than wishful thinking by the defendant. The majority asserts that the prior threats evidence was "highly relevant to whether the defendant reasonably feared imminent death or serious bodily injury when Dodge threatened to beat her on the night of the robbery." Ante at 9. I agree that the prior threats evidence could have some marginal incremental bearing on the degree and reasonableness of the defendant's asserted fear.[6] But fear — even great fear — of Dodge and/or Jones by the defendant is not all that is required to establish the defense of duress. In addition to being afraid, the fear must be of suffering imminent death or serious bodily injury. As we recognized in State v. Daoud, "one principle [of the duress defense] remains constant: if there is a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defense will fail." State v. Daoud, 141 N.H. 142, 147-48 (1996) (quotation and brackets omitted). And because duress is an affirmative defense, it is the defendant, rather than the State, who bears the burden of proving by a preponderance of evidence that no such alternative existed. Id. at 147.

In this case, even putting aside the defendant's initial lies to the police about her knowledge of, or involvement in, the robbery, and — after she supposedly "came clean" — her patently implausible explanation of her initial understanding of the reason for the trio's trip to New Hampshire,[7] the evidence plainly and overwhelmingly established that, regardless of any fear she had of Dodge and/or Jones, she did have alternatives to aiding and abetting in the commission of the robbery. See Daoud, 141 N.H. at 148 (holding that defendant's offer to prove that she was the victim of battered woman's

---

[6] The defendant was permitted to present to the jury her statements to the police that, on the night of the robbery, Dodge had threatened to "beat the shit out of her" if she did not drive him and Jones to the robbery; that if she did not drive, Dodge would take her car anyway "and that would be more of a fight"; that Dodge was getting out of control, would become angry very quickly, and that "it was his way or the f___ highway"; that she participated in the robbery only because she was scared and afraid she would get hurt if she did not do so; that she also was afraid of Jones because of his gang affiliation and possible retaliation against her; and that she was crying and upset when she told the police these things. In addition, she also established that both Jones and Dodge had prior criminal records and that, shortly after the robbery, Dodge had been arrested on an unrelated criminal charge. Given this evidence, which already portrayed Dodge as a brutish, controlling criminal, the admission of the prior threats evidence would have been cumulative and inconsequential, particularly because it had no bearing on the issue of the availability to the defendant of alternatives to aiding and abetting the robbery.

[7] The defendant's story to the police was that at about 10:00 p.m. on a Sunday evening, she and her boyfriend Dodge left for a two-hour ride to New Hampshire to visit her family — the expected arrival time therefore being somewhere around midnight. According to the defendant, on this supposed nocturnal journey to visit the family, she and Dodge were accompanied by a third person — Jones — whose real name she did not know because Dodge had told her that he did not want her to know the names of his friends so that she would be unable to give such information to the police. Needless to say, the defendant called no family members to offer any corroboration whatsoever of this version of events.

14

syndrome and was in fear of her boyfriend was properly rejected as defense to driving while intoxicated charge where evidence demonstrated that she had lawful alternatives to driving available). The undisputed evidence at trial was that the defendant was left alone in her car, which was parked in the lot of a next-door business some 50-75 yards away from the Baymont Inn, for a period of approximately seven minutes while Dodge and Jones entered the motel to commit the robbery. Yet she made no effort to drive away, run away, hide behind the Baymont or other businesses in the area, or call the police during this interval. The defendant argued below and asserts on appeal that there is no evidence she had either her cell phone or the car keys in her possession while her confederates were inside committing the robbery. To the contrary, not only was there weighty circumstantial evidence showing that she did have possession of both the car keys and her cell phone while she waited in the car,[8] but even if that were not the case, it was the defendant who bore the burden of proof to show the absence of alternatives to commission of the crime, and thus any weakness in the evidence on these points in no way undermined the State's compelling proof of the defendant's purposeful participation in the crime.

II

Because I would not reverse the defendant's conviction based upon the trial court's exclusion of the defendant's statements to the police regarding the prior threats evidence, I also address what arguably is an alternative argument advanced by the defendant: that the trial court committed error in refusing to allow her to adduce the prior threats evidence through her own direct testimony at trial. I conclude that this issue also is not preserved for our review.

During the hearing on the State's motion in limine, defense counsel stated: "And I think if we do present evidence through the Defendant, she would testify that [abuse by Dodge] did in fact happen in the past and she had been victim to abuse." This statement was the defendant's only indication that she might testify at the trial made prior to the court's ruling on the motion in limine. She made no mention of potentially offering the prior threats evidence through her own testimony in her written objection to the State's motion submitted the morning of trial, and she never again mentioned the possibility

---

[8] As the prosecutor aptly noted in his closing argument, the evidence plainly showed that the defendant's role in the robbery was to function as the driver of the getaway car. That being the case, the notion that Dodge and Jones would have taken the car keys with them, thus delaying the trio's flight from the scene while one of them returned the keys to the defendant so that she could operate the vehicle, obviously strains credulity. As to the cell phone, the police specifically asked the defendant why she did not call 911. Her response was not that she was unable to do so because she did not have possession of her cell phone; rather she said she did not call the police because she did not want to get Dodge in trouble and did not want to implicate herself.

15

during the pretrial hearing.  <u>After</u> the court's ruling that the prior threats evidence was not admissible, the defendant's counsel did inform the jury during his opening statement that the defendant might testify.  However, no further mention of the defendant potentially testifying was made during the remainder of the trial, and, at the conclusion of the State's case, the defendant rested without offering any evidence.  At no time did the court ever specifically address the admissibility of the defendant's <u>direct</u> <u>testimony</u> as to Dodge's prior threats, and the defendant does not argue on appeal that she did not testify <u>because</u> of the court's ruling on the motion <u>in</u> <u>limine</u>.  In fact, at oral argument her counsel acknowledged that "[t]he claim here is not that the court's ruling drove [her] from the witness stand or something like that."[9]

Nonetheless, the defendant argues that our review of the exclusion of the prior threats evidence is not limited to its admission through the testimony of the police officers, and that we may also consider whether the excluded evidence would have been admissible through her own direct testimony.  She asserts that her argument is considered preserved for our review upon a showing that (1) the trial court made a "definitive ruling" excluding the evidence, <u>see</u> <u>State v. Bennett</u>, 144 N.H. 13, 17 (1999), and (2) that the substance of the evidence was contemporaneously made known to the court by offer of proof, <u>see</u> <u>N.H. R. Ev.</u> 103(b).  I disagree.

As stated previously, "[i]n order to predicate error on a trial court's ruling excluding evidence, the proponent of the evidence bears the burden of making a contemporaneous offer of proof sufficient to apprise the court of the specific nature of the excluded evidence."  <u>Noucas</u>, 165 N.H. at 158.  This case is readily distinguishable from <u>Bennett</u>.  In that case, although the defendant argued only that he "might want to introduce" certain excerpts of a pretrial statement to police, prompting the State to contend that the argument was not preserved for appeal, the trial court later issued a written order declaring the excerpts in question to be inadmissible hearsay.  <u>Bennett</u>, 144 N.H. at 16-17.  As a result, we held that "the defendant's proffer was sufficient to alert the trial court to his argument, and the court's written order demonstrate[d] that the court considered it and ruled on it."  <u>Id</u>. at 17.  In this case, the defendant's purported offer of proof, while similar to the proffer in <u>Bennett</u> in its hypothetical nature, prompted no ruling by the trial court.  Indeed, the trial court did not respond to — or even acknowledge — counsel's statement that the prior threats evidence could be admitted through the defendant's testimony.

---

[9] In her initial brief on appeal, the defendant did state that "[f]ollowing these rulings [on the motion <u>in</u> <u>limine</u>], [the defendant] declined to testify."  However, this statement can be taken to mean only that the defendant declined to testify during the trial, and that this declination literally came after (<u>i.e.</u>, "<u>followed</u>") the trial court's rulings on the motion <u>in</u> <u>limine</u>.  It cannot be interpreted to mean that there was a causal connection between the court's ruling and the defendant's decision not to testify, especially given the defendant's admission at oral argument.

16

In any event, counsel's mere speculative assertion that testimony about the prior threats could be offered through the testimony of the defendant if she were to testify fails to establish that she was prejudiced by the court's ruling, particularly in light of her counsel's acknowledgment that there was no causal connection between the ruling and the defendant's decision not to testify. <u>Noucas</u>, 165 N.H at 159 (defendant must establish that he was prejudiced by court's evidentiary ruling); <u>cf</u>. <u>Luce v. United States</u>, 469 U.S. 38, 42-43 (1984) (holding that trial court ruling permitting defendant to be impeached with prior convictions was too speculative to warrant appellate review where defendant did not testify); <u>State v. Atkins</u>, 145 N.H. 256, 257-58 (2000) (same).

III

For the reasons stated above, I would affirm the defendant's conviction. I therefore respectfully dissent.